**Charles SCOTT, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–05–01129–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 12, 2007.

Jimmy Phillips Jr., Angelton, for appellants.

Donald W. Rogers, Jr., Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## SUBSTITUTE OPINION

CHARLES W. SEYMORE, Justice.

We grant appellant's motion for rehearing. Our opinion dated January 25, 2007 is withdrawn, and we issue this substitute opinion.

A jury found appellant, Charles Scott, guilty of aggravated sexual assault of a child and sentenced him to seventy-five years' confinement. In four issues, appellant contends the trial court erred by (1) excluding testimony from a witness regarding the complainant's reputation for untruthfulness, (2) allowing an unlisted witness to provide expert testimony (3) allowing a witness other than the outcry witness to testify regarding the complainant's statements, and (4) admitting a videotape as an outcry statement. We affirm.

## I. BACKGROUND

On June 9, 2004, complainant, A.S., who was seven-years old at the time, visited Cathy McIlveen's home to play with her children. At one point, McIlveen asked A.S. if she would miss her father when she went to visit her mother the following Saturday. A.S. replied, "no." When McIlveen asked A.S. why she would not miss him, A.S. said, "Because he hurts me." When asked how, A.S. cuffed her hand around McIlveen's ear, and spelled out "S–E–X." McIlveen instructed A.S. to not tell her anymore. That evening, McIlveen told her husband about A.S.'s revelation. The next morning, they called a police officer. Pursuant to the officer's instructions, McIlveen took A.S. to the Children's Assessment Center in Houston.

A.S. was interviewed on videotape by Lisa Holcomb, a forensic interviewer at the Children's Assessment Center. The videotaped interview was admitted and played during trial. A.S. was also examined at Hermann Hospital by Pamela Stahner, a forensic nurse. Stahner testified A.S. had a narrowed hymen. Based on the physical examination, she concluded A.S. suffered "sexual assault by history."

A.S. testified that on numerous occasions since she was four-years old, appellant caused her to participate in various forms of sexual activities with him, including sexual intercourse, anal intercourse, and oral sex. In addition, Dr. Barbara Matthews, a licensed clinical psychologist who saw A.S. weekly in psychotherapy since June 2004, testified A.S. had said her father had "S–E–X" with her, it hurt a lot, and she did not want to talk about it anymore.

## II. TESTIMONY OF MICHELLE HAYLOCK

In all of his issues, appellant challenges evidentiary rulings by the trial court. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Goff v. State*, 931 S.W.2d 537, 553 (Tex. Crim.App.1996). We will not disturb the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991).

■ First, appellant asserts the trial court erred by excluding testimony from witness Michelle Haylock, regarding A.S.'s reputation for truthfulness. Texas Rule of Evidence 608(a) provides:

The credibility of a witness may be attacked or supported by evidence in the form of *opinion or reputation,* but subject to these limitations:

(1) the evidence may refer only to character for truthfulness or untruthfulness; and

(2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been at-

tacked by opinion or reputation evidence or otherwise.

Tex.R. Evid. 608(a) (emphasis added).

During appellant's direct examination of Haylock, the following exchange occurred:

Q: Do you have an opinion regarding [A.S.'s] reputation for telling the truth?

A: Yes, I do.

Q: Is that opinion good or bad?

A: Bad.

Q: Is it such that she should be believed under oath?

[THE STATE]: I'm going to object.

THE COURT: That's sustained. Disregard that. That's not a proper question, sir. Do not ask it again.

Appellant contends the last question was proper because the witness had already testified relative to A.S.'s general reputation for truthfulness and it was proper to ask another question regarding reputation. In contrast, the State suggests the third question implicitly required the witness to opine whether the complainant lied under oath. We disagree. The answer to the first question established that the witness had an opinion regarding the complainant's reputation for telling the truth. The answer to the second question established that the witness believed the complainant's reputation was "bad." The third question was posited, "is it such that she should be believed under oath?" Appellant's counsel employed the definite article, "it." Accordingly, we conclude he was referring to complainant's reputation.

## A. Case law prior to the promulgation of Texas Rule of Evidence 608(a)

In support of his argument that the last question was proper, appellant cites two Court of Criminal Appeals cases decided before the Texas Rules of Evidence were promulgated. In both cases, the court considered questions regarding whether a witness was worthy of belief under oath.

First, in *Parasco v. State*, a witness was asked if he knew the general reputation of two witnesses for truth and whether it was good or bad. 168 Tex.Crim. 89, 323 S.W.2d 257, 258 (1959), *overruled on other grounds by Carey v. State*, 537 S.W.2d 757, 758 (Tex.Crim.App.1976). The witness was then asked, " 'In your opinion is the testimony of either one of them under oath worthy of belief?' " *Id.* Applying common law evidence, the court held that this second question was improper because " '*a party is not entitled to ask if such impeached witness is worthy of belief, as this form of question calls for the private opinion of the witness.*' " *Id.* at 259 (quoting 1 Branch's Ann. P.C. (2d ed.), p. 234, sec. 206) (emphasis in original). However, the court recognized, " '[a]fter a witness testifies that the general reputation of another witness is bad for truth, he may be asked if that general reputation is such as to entitle him to belief on oath.' " *Id.*

Subsequently, in *Sanne v. State*, the court addressed the following exchange:

Q: Sergeant Sanchez, would you tell the jury whether you know the general reputation for truth and veracity, in the community where he is best known, of Mr. Charles Victor Sanne?

A: Yes, sir.

Q: Is that reputation good or is it bad?

A: Bad.

Q: Is that reputation such as would entitle Mr. Sanne to be believed under oath?

*Sanne v. State*, 609 S.W.2d 762, 772 (Tex. Crim.App.1980). Citing *Parasco*, the court noted that the form of the last question was correct. *Id.* at 772 n. 5. Appellant contends and we agree that the last question in *Sanne* is semantically the same form as the last question in this case.

Both of these decisions were issued before promulgation of the Texas Rules of

Evidence. Since promulgation of the rules of evidence, the Court of Criminal Appeals has not addressed whether the rules affect these particular holdings.[1]

At common law a character witness's testimony should concern the "pertinent character trait-truthfulness" and could not "advert to other characteristics of the fact witness." Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence*, at 718–19 (1 Texas Practice, 3d ed.2002). Goode, Wellborn, and Sharlot further explain the relationship between common law evidence and Rule 608 as follows:

> Rule 608(a) breaks with common-law tradition, however, by permitting a character witness to relate her opinion regarding the fact witness's character for truthfulness. While superficially a dramatic change, it has not had a significant impact in practice. Two factors, explain this. First, as numerous commentators noted, reputation testimony often was little more than a badly-disguised form of opinion testimony. Second, to a limited extent *pre-Rules Texas courts had blurred the reputation/opinion distinction by permitting character witnesses,* after testifying that the fact witness's reputation for veracity was bad, to respond to questions such as "In view of such reputation, is he worthy of belief?" Regardless of whether a character witness testifies as a reputation or opinion

witness, she may testify only about the fact witness's character. Rule 608 does not authorize a witness to testify that another witness is telling the truth or lying.[2]

Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence*, at 719 (1 Texas Practice, 3d ed.2002) (emphasis added). Goode, Wellborn, and Sharlot cite to *Parasco* and *Sanne* as examples of cases in which "pre-Rule Texas courts had blurred the reputation/opinion distinction" under common law evidence. *Id.* at 719 n. 7.

> In a treatise on the Texas Rules of Evidence, Judge Cathy Cochran has also explained *[COMMENT1][COMMENT2][COMMENT3]*
>
> [L]ike the analogous federal rule, Rule 608(a) allows the character of a witness to be impeached or supported with opinion as well as reputation testimony. *The rule expands prior Texas law,* which confined character impeachment to reputation testimony. This expansion is merited because witnesses who testify about the general reputation of another witness for veracity are actually expressing their personal opinions of the witness, and the jury takes it as such. Witnesses may now be asked to state their opinion of the fact witness's character for truthfulness, and the witness may answer: "In my opinion X is a liar,"

---

**1.** Effective September 1, 1983, the Texas Supreme Court promulgated the Texas Rules of Civil Evidence. Effective March 1, 1998, the Texas Supreme Court and the Court of Criminal Appeals jointly promulgated the uniform Rules of Evidence to govern both civil and criminal cases.

**2.** We note that *Weinstein's Federal Evidence* treatise made a similar observation as to Federal Rule of Evidence 608: "The lifting of the ban on opinion evidence has had only a minimal effect on lay testimony. Most courts had rather illogically, but pragmatically, allowed a reputation witness to be asked whether based upon his or her knowledge of the reputation of the principal witness, he or she would believe the principal witness under oath, even though such a question obviously called for a conclusion by the reputation witness. A witness may now be asked directly to state his or her opinion of the principal witness's character for truthfulness and may answer, for example, 'I think X is a liar.'" 4 Jack B. Weinstein & Margaret A. Berg, *Weinstein's Federal Evidence*, § 608.13[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997).

or "In my opinion X is a truthful person."

CATHY COCHRAN, TEXAS RULES OF EVIDENCE HANDBOOK at 595 (5th ed.2003) (emphasis added).

Because pre-Rule courts blurred the common law distinction between opinion and reputation and Rule 608 now allows witnesses to state opinion as well as reputation testimony, it appears the holdings in *Parasco* and *Sanne* are not affected by promulgation of Rule 608. We believe the question, "Is *it* such that she should be believed under oath?" is a further question as to reputation based on the witness's opinion, which is allowed under Rule 608. Accordingly, we hold the question was proper and the trial court erred by not allowing the witness to answer.

## B. Harm Analysis

Pursuant to Texas Rule of Appellate Procedure 44.2(b), errors in criminal cases which do not affect substantial rights are to be disregarded. TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has found assurance that the error did not influence the jury, or had but a slight effect. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000) (citing *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim.App.1998)). When the claimed error is exclusion of a relevant piece of evidence, conducting a meaningful harm analysis requires consideration of all evidence which was admitted at trial. *Id.* The fact that a piece of evidence was wrongfully excluded from the jury's consideration is not sufficient to warrant reversal of a conviction

unless the exclusion had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* (citing *King,* 953 S.W.2d at 271).

■ We have reviewed the entire record and conclude that the jury was not adversely affected by the trial court's exclusion of Haylock's answer to the question whether A.S. should be believed under oath. Haylock had already testified that A.S. had a bad reputation. Appellant contends the error was harmful because the answer was necessary to demonstrate the *degree* of A.S.'s bad reputation for truthfulness. However, Haylock was not the only witness who testified A.S. had a bad reputation for truthfulness. Prior to Haylock's testimony, two school nurses, Kathy LaBrode and Kathy Jenkins, both testified that A.S. had a bad reputation for truthfulness.

In addition, we find significant evidence from which the jury could have concluded the incident occurred as described by A.S., notwithstanding the unanswered question. First, Cathy McIlveen testified that A.S. said her father had "S–E–X" with her. Pamela Stahner, the forensic nurse who examined A.S., testified A.S. suffered a history of sexual assault based on her physical examination of A.S., indicating a narrowed hyman. Lisa Holcomb, the forensic interviewer at the Children's Assessment Center, testified that A.S. was "very detailed" during the interview in both her verbal statements and non-verbal actions. At trial, Holcomb recited specific examples of detailed statements and actions by A.S. regarding the sexual assault. The jury also viewed the videotaped interview conducted by Holcomb. Accordingly, we find the error to be harmless because trial court's exclusion of the testimony did not have a substantial and injurious effect or influence in determining the jury's verdict.

## III. TESTIMONY OF CLINICAL PSYCHOLOGIST AS LAY WITNESS

■ Appellant contends the trial court erred by allowing Dr. Barbara Matthews to testify as a lay witness after appellant's counsel objected to her testimony because she was not listed as an expert. Appellant argues that Dr. Matthews testified in an "expert manner" causing the jury to give her testimony inappropriate weight. We disagree.

### A. Dr. Barbara Matthews's testimony

The State called Dr. Barbara Matthews. She testified without objection that she was a licensed clinical psychologist and had experience counseling people who had been traumatized. She further testified she had been seeing A.S. in psychotherapy weekly since June 2004, described what types of therapy she used with A.S. in the sessions, and stated A.S. had said that her father had "S–E–X" with her, it hurt a lot, and she did not want to talk about it anymore.

Appellant then asked whether Dr. Matthews was offered as an expert and took her on voir dire to inquire about her qualifications. After the jury was retired, appellant said Dr. Matthews was a "total surprise" because she was not listed as an expert on appellant's expert list. The State said Dr. Matthews had been on the State's subpoena list since April. The trial judge ruled, based on the "notice issue," that Dr. Matthews could testify as a lay witness.

Dr. Matthews then testified that A.S. had been referred by Victim Services in Big Spring, Texas and she had seen A.S. fifty to sixty times since June 2004. The State asked, "Can you think of a reason, just as a regular person, why a child in an abusive relationship . . . whether it be sexual or physical, might not tell about it right away?" After an objection from ap-

pellant, the trial court asked the State to lay a foundation for Dr. Matthews to answer the question on a non-expert basis. Dr. Matthews testified regarding her experience with children outside of work and explained that they tend not to come forward right away and talk about bad things that happened. Afterwards, the trial court ruled that Dr. Matthews could answer based on her work experience. Dr. Matthews then testified: "Children don't talk about things that trouble them unless they feel safe. And usually they're scared to death of talking about something that might get the person who's hurting them in trouble because they're attached to that person. . . . Especially if it is a caregiver." Based on this testimony, appellant contends the jury gave Dr. Matthews's testimony more weight than a lay witness because she had been presented as a person with specialized training as a doctor and therapist.

Pursuant to Texas Rule of Evidence 701, a lay witness may testify in the form of opinions or inferences if they are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *See* TEX.R. EVID. 701. Pursuant to Texas Rule of Evidence 702, an expert witness may testify in the form of an opinion if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact issue" and the witness is qualified as an expert by "knowledge, skill, experience, training, or education." TEX.R. EVID. 702.

■ An expert witness may qualify to give opinion testimony under both Texas Rule of Evidence 702, governing expert testimony, and Texas Rule of Evidence 701, permitting non-expert or lay opinion testimony. *Osbourn v. State,* 92 S.W.3d 531, 536 (Tex.Crim.App.2002). When a

witness who is qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony. *Id.* A person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts, and data used in his or her area of expertise under Rule 702. *Id.* (holding police officer's testimony as a lay witness that he smelled marijuana was admissible); *see also Harnett v. State*, 38 S.W.3d 650, 659 (Tex.App.-Austin 2000, pet. ref'd).

However, not all observations by witnesses with experience and training can be admitted as lay opinion testimony. *See Osbourn*, 92 S.W.3d at 537 (discussing *Emerson v. State*, 880 S.W.2d 759, 763 (Tex.Crim.App.1994), which held officer's opinion based on observations while administering the horizontal gaze nystagmus (HGN) test, a test based on a scientific theory, could only be admissible as expert testimony under Rule 702). Generally, "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. *This is true even when the witness has experience and training.*" *Osbourn*, 92 S.W.3d at 537 (emphasis added). Moreover, a lay witness with sufficient personal experience and knowledge may be qualified to express an opinion on a matter outside the realm of common knowledge with respect to events not normally encountered by most people in everyday life. *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.*

In addition, the requirement in Rule 701 that the opinion or inference of a lay witness be "rationally based on the perception of the witness" has two elements. *Harnett*, 38 S.W.3d at 657, 658 (citing 2A Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Courtroom Handbook on Texas Evidence*, ch. 5, art. VII, at 413 (Texas Practice 2000)). The first element is personal knowledge gained by perception of fact by the senses of the witness, including what was seen, heard, smelled, tasted, touched, or felt. *Id.* at 658 (citing *Bigby v. State*, 892 S.W.2d 864, 889 (Tex.Crim.App.1994)). The second element is the opinion must be one that a reasonable person could draw from underlying facts. *Id.* (citing *Fairow v. State*, 943 S.W.2d 895, 900 (Tex.Crim.App.1997)).

Appellant complains of Dr. Matthews's testimony stating, "Children don't talk about things that trouble them unless they feel safe. And usually they're scared to death of talking about something that might get the person who's hurting them in trouble because they're attached to that person.... Especially if it's a caregiver." We find Dr. Matthews's testimony to be that of a lay witness because it satisfies the requirements of Rule 701. First, Dr. Matthews's opinion was rationally based on her perceptions. Dr. Matthews testified she had experience both with children whom she was treating in her practice and children outside the context of her practice, giving her personal knowledge gained by her own observation and interaction with children. Further, a reasonable person could have such opinions by spending a significant amount of time around children. Second, her opinion was not based on a scientific theory; but it was helpful to the jury and did not require significant expertise to interpret. *See Osbourn*, 92 S.W.3d at 537. Therefore, the trial court did not

abuse its discretion by admitting Dr. Matthews's testimony as lay testimony.

## B. Jury Instructions

 Appellant also asserts the trial court erred by not giving the jury a limiting instruction as to Dr. Matthews's testimony. Specifically, appellant argues the trial court should have instructed the jury that Dr. Matthews's opinions were not offered and should not be considered as expert opinions. Appellant does not specify when the trial court should have given the limiting instruction. Because he cites to portions of Dr. Matthews's testimony and to proceedings prior to the time the charge was read to the jury, we assume he means the instruction should have been given when Dr. Matthews testified and recited when the charge was given to the jury.

 A party opposing evidence has the burden of requesting the limiting instruction at the introduction of the evidence. *Hammock v. State*, 46 S.W.3d 889, 892 (Tex.Crim.App.2001) (citing *Garcia v. State*, 887 S.W.2d 862, 878 (Tex.Crim.App. 1994)). Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes. *Id.* To be effective, a limiting instruction must be given when the evidence is admitted. *Id.* at 894 (citing *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim.App.1996) (op. on reh'g)). A limiting instruction cannot be given for the first time at submission of the jury charge, because it would allow the jury to "consider the evidence in an inappropriate manner during the trial." *Id.* at 893. Therefore, limiting instructions should be given to the jury twice: once when the evidence is admitted and again in the jury charge. *Id.* at 895 (citing *Rankin*, 974 S.W.2d at 712 n. 3)).

The record reflects at the time of Dr. Matthews's testimony, appellant never requested a limiting instruction as to Dr. Matthews's testimony. During Dr. Matthews's testimony, appellant objected that she had not been listed as an expert. Appellant further objected to Dr. Matthews testifying in any capacity. At the conclusion of the direct examination appellant's counsel said: "At this time I'm going to ask that the Court instruct the jury that they should *disregard any testimony* from Dr. Barbara Matthews." We find appellant's request that the trial court instruct the jury to disregard any testimony is not the same as asking for a limiting instruction. Because appellant did not timely ask for a limiting instruction, the trial court was not required to include a limiting instruction in the jury charge.[3] We hold the trial court did not err by refusing to give the jury a limiting instruction relative to Dr. Matthews's testimony.

Accordingly, we overrule appellant's second issue.

---

3. We note prior to recitation of the jury charge, appellant informed the trial court that he wanted to submit an "instruction" pertaining to Dr. Matthews's testimony. The trial judge told appellant he could submit the "instruction" after lunch. After the recess, the trial judge said, "Let the record reflect I included an admonishment in the jury charge regarding expert witnesses." There was no objection by appellant after the trial court's statement. The clerk's record does not include a written request for an instruction from appellant. Therefore, it is not clear whether the "expert witness" instruction was what appellant submitted to the court. The instruction in the jury charge as to expert witnesses was only a general instruction to the jury on expert witness testimony. Nevertheless, because appellant failed to request a limiting instruction at the time of Dr. Matthews's testimony, the trial court did not err by refusing to give a limiting instruction relative to Dr. Matthews's testimony.

## IV. ADMISSION OF VIDEOTAPED INTERVIEW

We next address appellant's fourth issue. Appellant contends the trial court erred by admitting the videotaped interview of A.S. by Lisa Holcomb because (1) it did not qualify as an outcry statement; (2) the trial court never reviewed the videotaped interview which was necessary for a reliability finding; and (3) the videotaped interview contained evidence of inadmissible extraneous offenses.

Hearsay evidence is not admissible except as provided by statute or the rules of evidence. *See* TEX.R. EVID. 802. Article 38.072 provides a statutory exception to the hearsay rule, allowing statements from a child victim twelve years of age or younger, describing the offense to the first person eighteen years of age or older, other than the defendant, to whom the victim made a statement about the offense. *See* TEX.CODE CRIM. PROC. ANN. Art. 38.072, §§ 1–2(a) (Vernon 2005). Article 38.072 also requires: (1) the party intending to offer the statement must give notice at least fourteen days before trial of its intent to offer the testimony, providing the name of the outcry witness and a written summary of the statement; (2) the trial court must determine in a hearing outside the presence of the jury that the statement is reliable; and (3) the child must testify or be available to testify. *See* TEX.CODE CRIM. PROC. ANN. Art. 38.072, § 2(b) (Vernon 2005).

▮ Appellant argues the trial court erred by admitting the videotaped interview because under Article 38.072 an outcry statement must be relayed through testimony of a live witness—not a videotape. Appellant cites *Dunn v. State* to support his argument. 125 S.W.3d 610, 613–14 (Tex.App.-Texarkana 2003, no pet.). In *Dunn*, the State informed the trial court that it intended to present to the jury videotaped interviews of the child victims by a social worker as an outcry statement under Article 38.072. *Id.* at 613. At trial, when the videotaped interviews were played, the defendant objected on the grounds of hearsay, reliability, and the confrontation clause. *Id.* The court of appeals held the videotaped interviews were not admissible as outcry statements because Article 38.072 clearly contemplates that a person subject to cross-examination will testify about the complainant's statements. *Id.* at 614.

However, in this case appellant failed to preserve error on this similar complaint. Before trial, in its Article 38.072 notice, the State explained that it planned to offer A.S.'s outcry statements through witnesses, Cathy McIlveen and Lisa Holcomb. During trial, appellant requested an Article 38.072 hearing to determine whether McIlveen or Holcomb was the outcry witness. At the hearing, appellant objected on the ground that the State's notice of intent to use A.S.'s hearsay statement was "deficient" because it specified two outcry witnesses, instead of only one—the first adult person with whom A.S. spoke. The Holcomb videotaped interview was never mentioned during the hearing. After listening to some of McIlveen's testimony outside the presence of the jury, the trial court concluded Holcomb was the outcry witness. However, the State never called Holcomb to testify.

Instead, during trial, the State introduced the actual videotape of Holcomb interviewing A.S. At that point, appellant did not object. Appellant had filed a pre-trial motion to determine admissibility of the videotaped interview pursuant to Article 38.071 and objected on grounds of state and federal confrontation clauses. *See* TEX.CODE CRIM. PROC. ANN. Art. 38.071 (Vernon 2005) (permitting video testimony of child victim in a hearing or proceeding in which court determines the child victim

would be unable to testify in the presence of the defendant). However, appellant never obtained a ruling on the pre-trial motion. *See* Tex.R.App. P. 33.1(a)(2)(A) (providing party must obtain a ruling on a pre-trial motion to preserve error for purposes of appeal). Further, appellant's objections at the Article 38.072 hearing concerned Holcomb as a *witness*, not the videotaped interview. The videotaped interview was never mentioned during the hearing. Therefore, appellant's objection under Article 38.072 to Holcomb as an outcry witness did not preserve error on his complaint that a videotaped interview is not admissible as an outcry statement. *See Sorto v. State*, 173 S.W.3d 469, 476 (Tex.Crim.App.2005) (finding defendant's objection at trial which did not comport with the issue raised on appeal, failed to preserve his complaint for appellate review).

Furthermore, appellant argues that the trial court erred by not viewing the videotaped interview to determine its reliability under Article 38.072, section 2(b)(2). However, as we have discussed, appellant waived any complaints regarding admission of the videotaped interview by failing to object. Nonetheless, as appellant has correctly argued, Article 38.072 does not apply to admission of a child victim's videotaped interview because it applies to the testimony of a live outcry witness. *See Dunn*, 125 S.W.3d at 614. Therefore, the trial court was not required to conduct a reliability hearing pursuant to Article 38.072 with respect to admission of the videotaped interview.[4]

Appellant also argues the trial court erred by admitting the videotaped interview in its entirety because it contained statements regarding extraneous offenses. Appellant contends he objected to admission of the extraneous offenses in the videotaped interview. However, the record reflects appellant objected to A.S.'s *testimony* regarding other sexual acts allegedly committed by appellant in addition to the charged offense. The trial court overruled his objection. Appellant did not object to the videotaped interview much less to the extraneous offenses described in the interview. Therefore, appellant waived his complaint.

Accordingly, we overrule appellant's fourth issue.

## V. CATHY McILVEEN'S TESTIMONY

In his third issue, appellant contends the trial court erred by allowing McIlveen to testify regarding A.S.'s statements despite finding she was not the outcry witness. Appellant contends McIlveen's testimony regarding A.S.'s statements was hearsay. The State argues McIlveen's testimony about A.S.'s statements was not hearsay because it was not offered to prove the truth of the matter asserted. We agree.

McIlveen's testimony regarding A.S.'s statements was not offered to prove the truth of the matter asserted. Instead, it was offered to show the circumstances under which McIlveen called the police. *See Cano v. State*, 3 S.W.3d 99, 110 (Tex.App.-Corpus Christi 1999, pet. ref'd) (holding police officer's testimony that he received information regarding use of appellant's residence for drug transactions prior to

4. We also note that the record is not clear whether the court considered the reliability of Holcomb's testimony when deciding she was the outcry witness. However, any complaint regarding whether or not the trial court considered the reliability of Holcomb's testimony would be moot because Holcomb never testified as the outcry witness. Although Holcomb was later called as a witness by the defense, she only testified regarding her interview methods and not about A.S.'s specific statements as to the sexual offenses.

the arranged buy, was not offered to prove drugs were actually being dealt from the residence at that time, but rather was offered to show why the investigation had focused on the appellants). Accordingly, the trial court did not abuse its discretion by admitting McIlveen's testimony regarding A.S.'s statement. We overrule appellant's third issue.

Accordingly, the judgment of the trial court is affirmed.