NO. 07-08-0060-CR
NO. 07-08-0061-CR
NO. 07-08-0062-CR
NO. 07-08-0063-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2009

_____

DAVEY ENRIQUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 7401, 7402, 7403 & 7404; HONORABLE LEE WATERS, JUDGE

_____

**MEMORANDUM OPINION**

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Davey Enriquez, appeals two convictions for aggravated robbery and two convictions for aggravated assault. Appellant plead not guilty to all charges, but was found guilty by a jury, which then assessed four concurrent 99 year sentences. Appellant

originally raised five issues; however, prior to submission, he waived issues one and two. By issue three, Appellant contends the evidence was factually insufficient and by issues four and five, he contends the trial court erred by admitting certain evidence. We affirm.

## Factual Background

A somewhat detailed recitation of the factual background is necessary to our discussion of Appellant's factual sufficiency issue. On Sunday, May 21, 2006, at approximately 9:00 a.m., Layne Conner and his wife, Mae Conner, were the victims of a home invasion robbery. Two masked men, one armed with a shotgun, and the other armed with a handgun, burst through the backdoor of their residence and confronted the Conners. The robbers' accents indicated they were Hispanic. The shotgun bearing robber was described as a "big heavyset guy" with distinctive dark eyes. He was the taller of the two gunmen. The handgun bearing robber was described as being about five feet seven-to-eight inches tall and weighing 175 to 180 pounds. During the robbery, Mr. and Mrs. Conner were made to lie on the floor. The shotgun bearing robber (whom Mr. Conner identified as "this defendant here") held his gun to the back of Mrs. Conner's head and the handgun bearing robber held his gun to the back of Mr. Conner's head. At one point, as a means of intimidation, the handgun bearing robber discharged his firearm, however, no one was injured.

The robbers immediately focused on a filing cabinet containing three separate bags of money containing approximately $35,000 in cash. After Mr. Conner handed over two

2

of the three bags of money, the robbers left, grabbing Mrs. Conner's purse on the way out. Mr. Conner observed the two robbers flee the scene of the crime in a newer model gray Jeep Cherokee with tinted windows; however, he was unable to read the vehicle tag number. The robbers left no physical evidence or fingerprints which tied Appellant to the scene of the crime.

While the robbery was taking place, Jesse Conner, the Conners' nine year old grandson, hid under his grandparents' bed. From there he observed one of the robbers wearing a shoe, "kind of like a tennis shoe," bearing an "S" on the side of the shoe.

After the robbers left, but before calling 911, Mrs. Conner called her daughter, Mayla Arreola. She suspected the robbers had gained information from Mayla pertaining to their residence and the stash of money because, several days earlier, while the Conners were out of town, Mr. Conner had contacted Mayla and asked her to count the cash which was contained in the bags located in the filing cabinet.

Initially, Mayla denied telling anyone about the money in the Conner home; however, she later admitted telling a friend, Tiffeni Martinez, the substance of her conversation with her father, including the existence and location of the money. Phone records introduced by the State showed that in the days just prior to the robbery, there were numerous cell phone conversations between Tiffeni's husband, Andrew Martinez, and his cousin, Carlos Cordova.

3

A police investigation, initiated by a Crime Stoppers tip, revealed that Appellant and Cordova were close friends and that the two were often seen in the company of Appellant's cousin, Adam Aguilar. At trial, Danielle Holmes testified that on May 20, 2006, the evening prior to the robbery, Appellant, Cordova, and an unidentified third person, came to her residence to visit with Woody (last name unknown, but later identified as Dustin Lee Allen). The three men had arrived in a gray, newer model Jeep Cherokee. After a conversation with Cordova, Woody told Danielle that he was going to Pampa to get some money and he would be back in a couple of hours; however, Holmes prevented Woody from leaving with the others. The next morning, "before daybreak," Cordova came back and told Woody that "it just didn't go as planned." A few days later, Holmes learned that Appellant, Cordova, and Aguilar were "irritated and agitated" because the police had questioned them about what "happened in Pampa on May the 21st." Holmes also testified that, after the 21st, Carlos and Appellant were wearing "nice," "flashy" clothes.

Another witness, Priscilla Badillo, the mother of Adam Aguillar's daughter, testified that she overheard Appellant "talking about him and Carlos and something about Carlos's cousin and Pampa, money, guns, kids, stuff like that." Based on this information and its similarity to news reports about the Pampa home invasion, Priscilla made the Crime Stoppers tip. Lorena Manriquez, the mother of Appellant's children, testified that Appellant owned a pair of Sketcher boots that had an "S" on the side of it. During the investigation, none of the clothing the robbers wore was recovered and none of the money taken was

4

recovered. No comparable fingerprints or shoeprints were found and no impressions of the tire prints from the place where the Jeep Cherokee departed were taken.

After the State rested, the defense offered testimony to the effect that Appellant attended a Quinceañera[1] in Amarillo for his cousin on the afternoon and evening of May 20, 2006. Testimony from Gilbert Maldonado, Appellant's cousin and brother of the Quinceañera honoree, indicated that Appellant stayed at the party "probably 'til four o'clock [a.m.]," the morning of May 21st. Manriquez testified that she and Appellant left the party between 3:00 to 4:00 a.m. and that she was driving since he was drunk. She further testified that Appellant stayed in bed that morning until approximately 10:00 to 10:30.

**Discussion**

Issue Three - Factual Sufficiency

By his third issue, Appellant contends the evidence is factually insufficient to sustain the verdict against him. More specifically, Appellant contends that, not only is the State's evidence tending to connect him with the offenses extremely weak, his evidence tending to establish an alibi is such that, when combined, they render the jury's verdict manifestly unjust.

---

[1]A Quinceañera, in the Hispanic culture, is a "coming of age" ceremony held on a girl's fifteenth birthday.

5

## Standard of Review-Factual Sufficiency Review

When conducting a factual sufficiency review, we begin with the assumption that the evidence is legally sufficient under *Jackson v. Virginia*. *See Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009). Evidence that is legally sufficient, however, can be deemed factually insufficient in either of two ways: (1) the evidence supporting the conviction is so weak that the jury's verdict seems " clearly wrong and manifestly unjust," "shocks the conscience," or "clearly demonstrates bias," or (2) considering contrary evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." *Id.; See also Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Watson v. State,* 204 S.W.3d 404, 426 (Tex.Crim.App. 2006); *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App. 1996). In a factual sufficiency review, the reviewing court must consider the probative weight of all of the evidence in a neutral light (i.e., without the prism of "in the light most favorable to the prosecution"). *Steadman v. State,* 280 S.W.3d 242, 246 (Tex.Crim.App. 2009); *Laster*, 275 S.W.3d at 518.

In reviewing a jury's decision we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given testimony, *Lancon v. State*, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). A jury is entitled to disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted. *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex.Crim.App. 2005). Therefore, appellate courts should afford almost total deference to a jury's decision when that decision is based upon an evaluation of

6

credibility, *Lancon*, 253 S.W.3d at 705; because, being present to hear the testimony, as opposed to relying upon a cold record, the jury is in the better position to judge the credibility of the witness. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

In conducting a factual sufficiency review, an appellate court must exercise its factual sufficiency jurisdiction with great deference to the jury's findings and we cannot conclude that the conviction is factually insufficient simply because we might otherwise disagree with the jury's verdict. *Watson*, 204 S.W.3d at 416-17; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Basically, the only question to answer in a factual sufficiency review is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *See Grotti*, 273 S.W.3d at 283 (citing *Watson*, 204 S.W.3d at 415).

As directed by the Court of Criminal Appeals, in conducting our analysis we are guided by at least three "basic ground rules": (1) we must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict;[2] (2) we may only find the evidence factually insufficient when necessary to "prevent manifest injustice";[3] and (3) in reversing a conviction we must explain why the evidence presented is too weak to

---

[2]*Watson*, 204 S.W.3d at 414.

[3]*Cain*, 958 S.W.2d at 407.

7

support the verdict or why the conflicting evidence greatly weighs against the verdict.[4] *Laster*, 275 S.W.3d at 518; *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

## Analysis

Our analysis of Appellant's factual sufficiency issue requires that we address both ways in which evidence can be determined to be factually sufficient. On the one hand, Appellant contends the evidence supporting the verdict is, in and of itself, too weak to support the jury's verdict; whereas, on the other hand, Appellant also argues there was conflicting evidence that renders the jury's verdict factually insufficient. We will address each argument separately.

## Evidence Supporting Verdict Too Weak

Appellant contends the evidence was factually insufficient because the evidence supporting the verdict was just too weak. In support of this argument, he contends the verdict is "clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence" because there is no physical evidence tending to connect Appellant to the crime. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the accused. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). While each fact need not point directly and independently to the guilt of the accused, the cumulative force of circumstantial evidence alone may be sufficient to support a conviction. *Id.*

---

[4]*Watson*, 204 S.W.3d at 414.

8

Although the Conners were unable to identify their robbers, Appellant never admitted his guilt, and no physical evidence was ever obtained directly connecting him to this offense, we find that the cumulative force of the above described circumstantial evidence is sufficient to make that connection.

Conflicting Evidence

Appellant also contends that other evidence presented tended to cast doubt on the jury's verdict. Specifically, having conceded that the evidence tending to connect Carlos Cordova to the offense was much greater, Appellant postulates the idea that he could not have been the other robber because he and Cordova were not brothers and there was testimony that when one of the robbers asked the other robber where the Conners' grandchild went, the other robber responded, "I don't know, *brother,* I don't know." He also suggests that he could not have been at the residence of Danielle Holmes on May 20th, because he was at the Quinceañera, and he could not have been at the Conners' residence on May 21st, at 9:00 a.m., because he was at home in bed.

"Uncontradicted testimony" is a concept totally different from "undisputed facts." *Evans,* 202 S.W.3d at 164. Merely because testimony is uncontradicted does not mean that its opponent, in this case the State, has assumed or admitted the truth of that fact, or that it concerns a physical fact that cannot be denied. A jury is entitled to determine which uncontradicted facts it chooses to believe and what inferences it chooses to draw from those facts, but it is not required to do either. *Id.* at 165.

9

Use of the term "brother" by one robber does not lead to the undeniable conclusion that the two perpetrators were "brothers" by blood or marriage. Furthermore, Appellant's presence at the Quinceañera does not exclusively eliminate the possibility that he was also at Danielle's residence. Finally, as to his alibi defense, the jury was not required to accept that testimony. Considering the conflicting evidence, and giving appropriate deference to the jury's verdict and its right to believe or disbelieve that evidence and the inferences to be drawn therefrom, we cannot say that the jury's verdict is "against the great weight and preponderance of the evidence."

Considering all of the evidence in a neutral light, we conclude the jury was rationally justified in finding guilt beyond a reasonable doubt. Issue three is overruled.

### Issue Four - Hearsay

By his fourth issue, Appellant contends that three statements introduced into evidence during Danielle's testimony were hearsay: (1) that, after talking to Carlos Cordova prior to the robbery, Woody told her "I'm just going to get some money," (2) that when Cordova later returned, Woody asked him "Did it go through?," and (3) that in response to that question, Cordova replied, "It just didn't go as planned." Appellant further contends that these statements are not subject to the "in furtherance of a conspiracy" or the "statement against interest" hearsay exceptions, and that their erroneous admission substantially influenced the verdict. In response, the State contends the first statement was a statement concerning future conduct, and thus not hearsay, and the second and

10

third statements were statements against interest. The State also contends Appellant waived any objection to the third statement by failing to make a contemporaneous objection.

## Analysis

Appellate courts review decisions regarding the admissibility of evidence under an abuse of discretion standard. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991). Because the trial court is in the best position to decide questions fo admissibility, appellate courts should uphold the trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.* An appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with that decision. *Id.; Cameron v. State,* 241 S.W.3d 15, 19 (Tex.Crim.App. 2007).

"Hearsay" is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). A statement is not hearsay, by definition, if it is offered against a party and is a statement by a co-conspirator of that party, made during and in furtherance of the conspiracy. Tex. R. Evid. 801(e)(2)(E). Furthermore, a statement which, at the time of its making, so far tended to subject the declarant to criminal responsibility that a reasonable person in declarant's position would not have made the statement unless believing it to be true, is an exception to the general hearsay rule. Tex. R. Evid. 803(23).

11

The relevance of Woody's statement that he was going to get some money was that, if true, it tended to prove that Woody had joined a conspiracy, consisting of Cordova, Appellant, and an unidentified third person, to obtain some money, in Pampa, by some method, on the night of May 20, 2006; thereby inferring that Appellant also intended the same thing.  As such, it was the truth of his future intent that had any relevance. Statements concerning a declarant's then existing state of mind, including his future intent or plan, is an exception to the hearsay rule.  *See* Texas Rules of Evidence 803(3); *Saldivar v. State,* 980 S.W.2d 475 (Tex.App.–Houston [14th Dist.] 1998, pet. ref'd).

Concerning Woody's question, "Did the deal go through?," the challenged statement is not hearsay because it was not offered in evidence to prove the truth of the matter asserted.  A purely contextual out-of-court statement that is nothing more than a question is not hearsay.  *Fischer v. State,* 207 S.W.3d 846, 850 n.5 (Tex.App.–Houston [14th Dist.] 2006, *aff'd on other grounds* 252 S.W.3d 375 (Tex.Crim.App. 2008).

Finally, Cordova's response, "It just didn't go as planned," inferentially tends to show that Cordova committed or attempted to commit the offense that was the subject of the previously discussed conspiracy, i.e., to obtain some money, in Pampa, by some method. When combined with other evidence, the probative force of which was to show that an aggravated robbery was committed, in Pampa, by Cordova, it can be said that, at the time of its making, the statement so far tended to subject the declarant (Cordova) to criminal responsibility that a reasonable person in declarant's position would not have made the

12

statement unless believing it to be true.  Accordingly, the trial court did not err in admitting the three challenged statements.

<u>Issue Five - Witness's "Sense" Testimony</u>

By his fifth and final issue, Appellant contends the trial court erred by allowing a witness to testify as to the "sense" she had that a weapon was in the vehicle occupied by Appellant on the evening prior to the robbery.  Appellant further contends the error substantially influenced the jury's verdict, calling for a reversal of his conviction.

Analysis

Danielle Holmes testified that she was present the evening before the robbery when Appellant, Carlos Cordova, and an unidentified third person came to her house and visited with Woody about a "deal" in Pampa.  When asked if she saw anyone with a gun, Holmes replied:

> You can hear it but, you know, it could have been some change, it could have been whatever but you can, you know, – I don't know how to explain it.

When then asked if she had a "sense" that there may have been weapons present, over Appellant's objection, she replied:

> What I'm trying to say is you couldn't tell what it was but you can see, you know, it was something but you don't know what it was, so I can't really say if it was a gun or a knife or whatever, but you can tell it was something –

Here, Holmes was permitted to give her personal opinion (or "sense") as to whether there was a weapon present when Appellant, Cordova, and a third party visited with Woody concerning a "deal" that was to take place in Pampa. Pursuant to Texas Rule of Evidence 701, a lay witness may testify in the form of an opinion or inference if that opinion is (1) rationally based on the perception of the witness and (2) it is helpful to a clear understanding of the witness's testimony or the determination of a fact issue. *Scott v. State,* 222 S.W.3d 820, 827 (Tex.App.–Houston [14[th] Dist.] 2007, no pet.). The challenged testimony was nothing more than Holmes's opinion as to whether a weapon was present, rationally based upon her auditory perception. It was helpful to a clear understanding of her reasons for persuading Woody not to become involved in the events of that evening. The trial court's decision to allow that testimony falls within the zone of reasonable disagreement. Issue five is overruled.

## Conclusion

Accordingly, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

14