

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00245-CR

———————————————————

ARIEL PEREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1743406R

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant Ariel Perez was charged with three counts of aggravated sexual assault and one count of assault–family violence by impeding the breath or circulation of his girlfriend. A jury convicted Perez of one count of aggravated sexual assault (acquitting him of two other sexual assault counts) and convicted him of assault–family violence. The jury assessed a sentence of fifteen years for the sex offense and ten years for the assault. Perez now appeals, arguing that (1) the trial court improperly excluded testimony regarding the complainant's reputation for truthfulness and (2) the punishment charge improperly instructed the jury that Perez was eligible to receive good-conduct time credit in prison. We rule against Perez on both points of error, concluding that the wrongful exclusion of evidence was harmless and that he was not egregiously harmed by the punishment charge error. Accordingly, we affirm.

### II. Factual Background

The complainant and Perez had been in a relationship since 2014. On May 17, 2020, Perez arrived at her apartment in the evening. The complainant received a phone call but did not answer it—Perez grabbed her by the hair and punched her, then carried her to the bedroom. Perez said to her, "Son of a bitch, you have someone else, someone else that is calling you." The complainant was too afraid to argue with him.

The complainant tried to leave, but Perez grabbed her and hit her, pushing her down on the bed. Perez choked her with his hands, hard enough that she thought she was going to die. Perez also kicked her to an extent that she felt that her ribs were broken. According to the complainant, Perez got on top of her and forced his penis into her vagina. He also put something in her vagina, but she was unsure what it was at that moment. The complainant later told the sexual assault nurse examiner that Perez had put a tissue inside of her.

Perez stopped when the complainant's children knocked on the bedroom door. Perez left the room, telling the children that there was nothing going on. After seeing their mother, the children went next door to get help. The complainant was taken to the hospital and admitted overnight. She had a broken hand (or finger) which required surgery. She also suffered bruising and swelling to her face. During an internal examination of the complainant, the sexual assault nurse examiner retrieved a paper tissue from her vagina.

A few weeks later, the complainant met Perez in a park to discuss their children and for Perez to pay her back money that he owed her. The complainant got into Perez's car, and he drove to another park, ostensibly to speak with her. When they arrived, Perez forced her to perform oral sex on him. The complainant was eventually able to get away from Perez, and she called the police.

3

### III. Excluded Evidence

Perez's defense centered on what he argued was the complainant's lack of credibility. To that end, he called Magdalano Alberto as a witness. Alberto testified that he knew the complainant and her previous boyfriend. Defense counsel asked Alberto if he "had an opportunity to hear persons in [his] community discuss the character of [the complainant] regarding her truthfulness." After the State's objection to this was overruled, defense counsel asked whether Alberto had decided whether the complainant had "a particular reputation in the community on the subject of truthfulness." He replied that he did, and then answered that her reputation was bad. Counsel then asked, "Is her reputation such that it should be believed when she's under oath?" The trial court sustained the State's objection to this question.

The Rules of Evidence allow a character witness to testify not only about another witness's reputation for truthfulness or untruthfulness but the character witness may also relate an opinion regarding the fact witness's character for truthfulness. Tex. R. Evid. 608(a); *Dixon v. State*, 2 S.W.3d 263, 272 (Tex. Crim. App. 1999) (op. on reh'g). We review a trial court's decision to exclude evidence under an abuse-of-discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will not disturb the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

## A. The Excluded Evidence Was Admissible

On appeal, Perez relies on *Scott v. State*, 222 S.W.3d 820 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g), as the basis for his claim that the trial court erred in excluding his proffered evidence. In *Scott*, a witness testified that the victim's reputation for telling the truth was "bad," and when asked if the victim's reputation was such that "she should be believed under oath," the State objected and the trial court sustained that objection. *Id.* at 824. The court of appeals examined the language of Rule 608(a) and pre-Rules cases[1] that approved of nearly identical opinion questions. *Id.* at 824–25. The court held that a question about whether a fact witness's reputation was such that she should be believed under oath was a proper question as to reputation based on the character witness's opinion, an opinion that was allowed under Rule 608. *Id.* at 826.

The State does not respond to Perez's arguments on the merits and does not address the holding of *Scott*. We take this as a concession that the trial court erred in excluding a question to Alberto that was indistinguishable from that held to be proper in *Scott*. We agree with the reasoning in *Scott*, and we therefore agree with the State's concession that it was error to exclude Alberto's opinion about whether the complainant should be believed under oath.

---

[1] *See Sanne v. State*, 609 S.W.2d 762, 772 n.5 (Tex. Crim. App. 1980); and *Parasco v. State*, 323 S.W.2d 257, 258 (Tex. Crim. App. 1959), *overruled on other grounds by Carey v. State*, 537 S.W.2d 757, 758 (Tex. Crim. App. 1976) (op. on reh'g).

**B. Any Error in Excluding the Evidence Was Harmless**

The State argues that Perez was not harmed by this exclusion of evidence. We agree.

Rule 44.2(b) of the Texas Rules of Appellate Procedure requires us to disregard any nonconstitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). An error that has a "substantial and injurious effect or influence in determining the jury's verdict" affects a substantial right. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Perez's substantial rights were not affected by the trial court's refusal to let him ask Alberto if he thought that the complainant's reputation raised doubts about her believability under oath. First, Alberto was allowed to testify that not only had he discussed her reputation for truth-telling with others who knew her, but he also testified that her reputation for truthfulness was bad. *See Scott*, 222 S.W.3d at 826 (holding defendant was not harmed by exclusion of similar testimony where character witness testified that fact witness's reputation was bad).

6

Second, Perez called another witness to testify as to the complainant's character for truthfulness. Amparo Lainez, Perez's brother, testified that he knew her, that he was able to observe her, and that he had formed an opinion as to her character with regard to truthfulness. In Lainez's opinion, the complainant "did not speak or tell the truth." *See id.* at 826 (holding exclusion of similar testimony harmless where other witnesses testified that victim had a bad reputation for truthfulness).

Finally, the complainant herself was subject to intense impeachment by the defense on all aspects of her testimony. For example, defense counsel implied that the complainant was jealous of Perez's relationship with his ex-wife and that this would have given her cause to falsely accuse Perez of assaulting her. She was also questioned about her testimony that Perez got angry when a man from Honduras called her about a potential real estate transaction; defense counsel implied that she may have actually been involved with the man who phoned her and precipitated Perez's anger. Defense counsel also pointed out inconsistencies between her testimony and what she told detectives. And counsel was able to directly argue to the jury that they "saw [the complainant] lie a whole bunch of times." Given the complainant's impeachment, and the testimony about her truth-telling reputation by Alberto and Lainez, we hold that the exclusion of Alberto's opinion about whether the complainant should be believed under oath did not influence the jury. *See Pinion v. State*, No. 08-13-00045-CR, 2015 WL 1851132, at *6 (Tex. App.—El Paso Apr. 22, 2015, no pet.) (holding that exclusion of reputation-for-truthfulness evidence did not

7

affect defendant's substantial rights where it was cumulative of other evidence presented at trial).

We overrule Perez's first point of error.

## IV. Good-Conduct Time Instruction

In his second point of error, Perez complains that the court's punishment charge included an impermissible reference to the possibility that he may receive credit for "good-conduct time" in prison. Article 37.07, Section 4(a) of the Code of Criminal Procedure no longer refers to good-conduct time. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 2.08, 2015 Tex. Gen. Laws 2321, 2366–68 (amended 2019) (current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)). The current version of Section 4(a) refers only to parole. Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a). The State concedes this instruction was given in error, and we agree, having previously considered this issue in *Bailey v. State*, No. 02-22-00186-CR, 2023 WL 5766138, at *6 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op., not designated for publication), and *Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at *5 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication).

Having determined that there is error in the charge, we must conduct the appropriate harm analysis. Perez did not object to this instruction. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157,

8

171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

We turn first to the punishment charge as a whole. Although the jury was instructed that they "may consider the existence of the parole law and good[-]conduct time," they were told not to consider the extent to which good-conduct time and parole may be applied to Perez. The record does not indicate that the jury failed to deliberate and decide the case based on the instructions contained in the charge as a whole. *See Bailey*, 2023 WL 5766138, at *6; *Weaver*, 2022 WL 2978730, at *5. As in

9

*Bailey* and *Weaver*, the jury did not send any notes regarding parole, time credit for good conduct, or how those issues would affect Perez's punishment. *See Bailey*, 2023 WL 5766138, at *6; *Weaver*, 2022 WL 2978730, at *5.

Second, the state of the punishment evidence does not make it more likely that the good-conduct time instruction harmed Perez. The State presented evidence showing that Perez was convicted of the offense alleged in his repeat-offender notice, namely felony driving while intoxicated. There was also evidence that Perez had been convicted of two earlier drunk driving offenses. Perez's evidence consisted of two character witnesses who know Perez and testified favorably about him. There was also a psychotherapist who testified that Perez's main problem is his alcohol abuse and believed that Perez has a low risk of reoffending. The jury assessed sentences of fifteen years for count three (aggravated sexual assault) and ten years for count four (assault on a family member).[2] These sentences represent the minimum and the middle of both offenses' respective ranges.[3] Given these facts, it cannot be said that the good-conduct time instruction had any effect on the jury's evaluation of the evidence at punishment.

---

[2]The trial court ordered that the sentences are to run concurrently.

[3]The range for an enhanced charge of aggravated sexual assault is fifteen to ninety-nine years or life. Tex. Penal Code Ann. § 12.42(c)(1). The range of punishment for the enhanced assault is the same as that of a second-degree felony, from two to twenty years. *Id.* §§ 12.33, .42(a).

Third, neither counsel for the State nor defense counsel mentioned good-conduct time during their final arguments at punishment. This factor weighs against a finding of egregious harm. *See Weaver*, 2022 WL 2978730, at *6.

Finally, under the "any other relevant information" factor of our analysis, Perez focuses on the fact that guilt was "hotly contested" and speculates that the jury would have shortened its assessed term of imprisonment had they not received the good-conduct-time instruction. Neither of these arguments, however, amounts to a finding of actual—as opposed to theoretical—harm. *See Almanza*, 686 S.W.2d at 174.

All of the factors in this case weigh against a conclusion that Perez suffered egregious harm. We overrule his second point of error.

## V. Conclusion

Having overruled Perez's two points of error, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 22, 2023

11