594-15

NO. PD-0594-15

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

ORIGINAL

FILED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

EDWARD GUZMAN,

PETITIONER,

v.

THE STATE OF TEXAS,

RESPONDENT.

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

PETITION IN CAUSE NO. CR-12-0006, FROM THE
22ND JUDICIAL DISTRICT COURT OF HAYS COUNTY, TEXAS,
AND APPEAL NO. 03-13-00131-CR,
IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS

EDWARD GUZMAN'S

PETITION FOR DISCRETIONARY REVIEW

Edward Guzman # 1845822
Petitioner, Pro Se
French M. Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601
(325) 548-9035

## TABLE OF CONTENTS:

INDEX OF AUTHORITIES......................................... ii

STATEMENT REGARDING ORAL ARGUMENT............................ iv

STATEMENT REGARDING LIBERAL SCRUTINY......................... iv

STATEMENT OF THE CASE........................................ iv

PROCEDURAL HISTORY........................................... iv

QUESTIONS PRESENTED FOR REVIEW............................... 1

STATEMENT OF FACTS........................................... 1

ARGUMENT:

QUESTION NO. 1 - Did the Court of Appeals err in finding that Petitioner's claims of Ineffective Assistance of Counsel were merely speculative and did not constitute a demonstration, founded in the record, that no reasonable trial strategy existed? ... 2

QUESTION NO. 2 - Did the Court of Appeals err in finding that the trial court did not abuse its discretion in allowing irrelevant and unfairly prejudicial extraneous offense evidence to be admitted during trial? ................................... 6

QUESTION NO. 3 - Did the Court of Appeals err in finding that the erroneous self-defense jury instruction did not harm Petitioner? ...... 7

QUESTION NO. 4 - Did the Court of Appeals err in finding that Petitioner did not properly preserve his complaint of the State's improper jury arguments, thereby precluding it from being raised on appeal? ................................... 9

PRAYER FOR RELIEF........................................... 11

UNSWORN DECLARATION......................................... 11

CERTIFICATE OF SERVICE...................................... 12

APPENDIX - Memorandum Opinion of Third Court of Appeals ................. END

# INDEX OF AUTHORITIES:

## Cases:

### Federal:

* <u>Brown v. Allen</u>, 344 U.S. 445 (1953).......................................... iv

* <u>Bush v. U.S.</u>, 823 F.2d 909 (5th Cir. 1987)................................... iv

* <u>Griffin v. California</u>, 380 U.S. 609 (1965)................................... 10

* <u>Haines v. Kerner</u>, 404 U.S. 519-520 (1972)................................... iv

* <u>Hinton v. Alabama</u>, 134 S.Ct. 1081 (2014).................................... 5

* <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986)................................... 5

* <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946).............................. 7,11

* <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)................................ 2,3,5

* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000)...................................... 5

### State:

* <u>Almanza v. State</u>, 686 S.W.2d 157 (Tex.Crim.App. 1985) ...................... 8,9

* <u>Barrios v. State</u>, 283 S.W.3d 348 (Tex.Crim.App. 2009)....................... 8,9

* <u>Bone v. State</u>, 77 S.W.3d 828 (Tex.Crim.App. 2002)............................ 2

* <u>Brown v. State</u>, 814 S.W.2d 477 (Tex.App. - Dallas 1991)..................... 10

* <u>De La Paz v. State</u>, 279 S.W.3d 336 (Tex.Crim.App. 2009)..................... 6,7

* <u>Jackson v. State</u>, 973 S.W.2d 954 (Tex.Crim.App. 1998)........................ 2

* <u>King v. State</u>, 953 S.W.2d 266 (Tex.Crim.App. 1997).......................... 7,11

* <u>Lopez v. State</u>, 793 S.W.2d 738 (Tex.App. - Austin 1990)..................... 10

* <u>Mansfield v. State</u>, 306 S.W.3d 773 (Tex.Crim.App. 2010...................... 4,5

* <u>Montgomery v. State</u>, 810 S.W.2d 372 (Tex.Crim.App. 1990).................... 6

* <u>Montoya v. State</u>, 744 S.W.2d 15 (Tex.Crim.App. 1987)........................ 10,11

* <u>Morales v. State</u>, 375 S.W.3d 1 (Tex.Crim.App. 2011)......................... 8,9

* <u>Palasota v. State</u>, 460 S.W.2d 137 (Tex.Crim.App. 1970)...................... 4

* <u>Rankin v. State</u>, 974 S.W.2d 707 (Tex.Crim.App. 1996)........................ 6

* <u>Scott v. State</u>, 222 S.W.3d 820 (Tex.App. - Houston [14th Dist.] 2007)....... 3

* <u>Thompson v. State</u>, 9 S.W.3d 808 (Tex.Crim.App. 1999)........................ 2

* <u>Trevino v. State</u>, 577 S.W.2d 242 (Tex.Crim.App. 1979)....................... 4

* <u>Walker v. State</u>, 440 S.W.2d 653 (Tex.Crim.App. 1969)........................ 3,4

* <u>Wesbrook v. State</u>, 29 S.W.3d 103 (Tex.Crim.App. 2000).......................10,11

**Statutes and Rules:**

TEX. CODE CRIM. PROC. 36.19.................................................. 8

37.07 § 4.................................................. 10,11

TEX. PENAL CODE § 20.02.................................................. iv

§ 20.04.................................................. iv

§ 22.02.................................................. iv

§ 9.31(a).................................................. 8

TEX.R.APP.PROC. 44.2(b).................................................. 7

68.5.................................................. 1

TEX.R.EVID. 401.................................................. 6,7

402.................................................. 6,7

403.................................................. 6,7

404(b).................................................. 6,7

608.................................................. 3

[This Space Intentionally Left Blank]

## STATEMENT REGARDING ORAL ARGUMENT:

The Petitioner is an inmate in the Texas Department of Criminal Justice and thus is not eligible to present any oral argument before the Court; if the Court grants Discretionary Review and recognizes any issue as needing oral argument, Petitioner requests the Court appoint counsel to represent him in such proceedings.

## STATEMENT REGARDING LIBERAL SCRUTINY:

Petitioner is a layman of the law, unskilled and without experience in the drafting of legal papers; therefore, he is entitled to a review that comes under a less stringent standard than those formal proceedings submitted by artful and skilled practitioners of the law; and thus, his litigations should be construed liberally under Haines v. Kerner, 404 U.S. 519-520 (1972); Brown v. Allen, 344 U.S. 445, 502 (1953); Bush v. U.S., 823 F.2d 909, 910 (5th Cir. 1987).

## STATEMENT OF THE CASE:

This is an appeal from the conviction of four felony offenses - Aggravated Kidnapping, Aggravated Assault with a Deadly Weapon, Aggravated Assault Causing Serious Bodily Injury, and Unlawful Restraint - all arising from the same criminal episode, under Texas Penal Code §§ 20.04, 22.02, 20.02. Petitioner was acquitted of an additional charge of Attempted Murder. The jury assessed punishment of conf- inemtne in the Texas Department of Crimnal Justice for 60 years for the kidnapping, 20 years and 60 years for the assaults, and 10 years for the unlawful restraint.

## PROCEDURAL HISTORY:

On January 18, 2012, Petitioner was indicted for the felony offenses of Aggravated Kidnapping, Attempted Murder, Aggravated Assault with a Deadly Weapon, Aggravated Assault Causing Serious Bodily Injury, Unlawful Restratint, Theft of a Firearm, and Credit Card Abuse. Prior to trial, the State abandoned its allegation of theft of a firearm and credit card abuse. On February 11, 2013, a jury found Petitioner guilty of the offenses of Aggravated Kidnapping, Aggravated Assault with a Deadly Weapon, Aggravated Assault Causing Serious Bodily Injury, and Unlaw- ful Restraint. The jury appropriately acquitted Petitioner of the offense of Atte- mpted Murder. The above mentioned cause was tried under Cause No. CR-12-0006, in the 22nd Judicial District Court of Hays County, Texas. Petitioner timely filed Notice of Appeal on February 21, 2013, and a Motion For New Trial on March 4, 2013

which was overruled by operation of law. Appeal was timely perfected in the Third Court of Appeals, at Austin, Texas, in Appeal No. 03-13-00131-CR. On May 13, 2015, said appeal was affirmed in an unpublished opinion (Guzman v. State, No. 03-13-00131-CR, May 13, 2015)(not designed for publication). No Motion For Rehearing was filed. Petitioner filed a motion for extension of time in which to file Petition for Discretionary Review, which was granted on May 19, 2015, and the current deadline for such filing was extended to August 11, 2015. This petition is therefore timely filed.

---

[This space intentionally left blank]

## QUESTIONS PRESENTED FOR REVIEW:

1. Did the Court of Appeals err in finding that Petitioner's claims of Ineffective Assistance of Counsel were merely speculative and did not constitute a demonstration, founded in the record, that no reasonable trial strategy existed ?

2. Did the Court of Appeals err in finding that the Trial Court did not abuse its discretion in allowing irrelevant and unfairly prejudicial extraneous offense evidence to be admitted during trial ?

3. Did the Court of Appeals err in finding that the erroneous self-defense jury instruction did not harm Petitioner ?

4. Did the Court of Appeals err in finding that Petitioner did not properly preserve his complaint of the State's improper jury arguments, thereby precluding it from being raised on appeal ?

## STATEMENT OF FACTS:

Due to the elaborate nature of the facts of this case, the facts relevant to the issues raised will be discussed in the argument section with the respective question presented for review. A statement of facts in both places would require Petitioner to exceed the page limit mandated by Rule 68.5 of the Texas Rules of Appellate Procedure.

[This space intentionally left blank]

1.

## QUESTION ONE: [restated]:

**Did the Court of Appeals err in finding that Petitioner's claims of Ineffective Assistance of Counsel were merely speculative and did not constitute a demonstration, founded in the record, that no reasonable trial strategy existed?**

Petitioner's trial attorney rendered ineffective assistance of counsel, in at least two ways: (1) When he failed to object to the testimony of the responding officer in this case, when he testified that victim was being truthful, Petitioner was untruthful in his statements to police, and Petitioner's girlfriend's testimony was rehearsed; and (2) When he failed to prove up Petitioner's eligibility for probation at trial.

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) trial counsel's representation was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced Petitioner so that there is a reasonable probability that the result of the proceeding would have been different, but for the deficient performance of counsel. Strickland v. Washington, 466 U.S. 668 (1984); Thompson v. State, 9 S.W. 3d 808, 812 (Tex.Crim.App. 1999). Petitioner must support his claims by a preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).

Often times, the record on direct appeal is insufficient to determine if a defendant received ineffective assistance of counsel; however, where there can be no reasoned trial strategy for counsel's choices, an Appellate Court may decide the issue on the record before it. Bone v. State, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002); Thompson, 9 S.W.3d at 813, 816. Petitioner contends that there can be no "reasoned trial strategy" for his trial counsel's ineffectiveness, therefore the Court of Appeals should have found counsel ineffective on the record before it.

**A. Counsel's failure to object to testimony of the responding officer when he testified that the victim in this case was being truthful, Petitioner was not truthful in his statements to police, and Petitioner's girlfriend's testimony was rehearsed.**

Counsel allowed the responding officer, Officer Cumberland, to testify without objection, that the victim's (Danielle Gay) statements to law enforcement were truthful. (RR3:112). In fact, Cumberland testified that she had "been in the

---

Note: "RR" denotes the Reporter's Record in this case, and will be cited with the volume number ":" page number.

---

2.

business for twelve years and everything that [Gay] said, I felt she was being honest and truthful." Next, Cumberland testified that she felt Petitioner's statements to law enforcement were untruthful and Ofelia's (Petitioner's girlfriend) initial statement to police, in which she did not inculpate herself or Petitioner, seemed "rehearsed" as if she had just spoken to Petitioner. (RR3:73, 183).

While Texas Rules of Evidence 608 permits a witness to testify to the general reputation of a witness for truthfulness, if that witness has personal knowledge of the witness's reputation for such, it does not allow one witness to testify that another witness is telling the truth or lying. TEX.R.EVID. 608; Scott v. State, 222 S.W.3d 820, 825-826 (Tex.App. - Houston [14th Dist.] 2007).

There can be absolutely no trial strategy in allowing a patrol officer to testify that the victim is telling the truth and your client is lying in violation of the Texas Rules of Evidence; especially when the evidence against your client is largely the testimony of the alleged victim. Counsel's performance was undeniably harmed by counsel's deficient performance because what more damaging evidence could there be in a case in which there are two sides to a story but the testimony of a law enforcement officer that one side is telling the truth and the other is not? In that situation, a jury could not help but be swayed by testimony of this nature. That is why testimony of this kind is inadmissible under the Rules of Evidence, to prevent an unfair outcome of a defendant's trial. See TEX.R.EVID. 608; Scott, 222 S.W.3d at 825-826.

Petitioner has established that his counsel's performance was deficient in this respect, and the outcome of his trial was affected by counsel's deficient performance. Strickland, 466 U.S. at 684. A reasonable probability exists that but for counsel's errors, the outcome of Petitioner's trial would have been different, and no possible trial strategy can excuse such a tremendous error. That being the case, the Court of Appeals erred in not reversing Petitioner's convictions on his substantial claim of ineffective assistance of counsel.

**B. Counsel's failure to prove up Petitioner's eligibility for probation at trial.**

Counsel provided ineffective assistance of counsel in failing to prove up Petitioner's eligibility for probation at trial. It has long been held that a jury may not recommend probation unless the sworn motion for probation is timely filed and the evidence shows that the defendant has never been convicted of a felony in this state or anyother state. Walker v. State, 440 S.W.2d 653, 659 (Tex.Crim.App. 1969). The mere filing of application for probation is insufficient to establish probation eligibility, and the trial court is not authorized to include a probati-

3.

on instruction without supporting evidence. Palasota v. State, 460 S.W.2d 137, 140-141 (Tex.Crim.App. 1970). To prove probation eligibility, the defendant need not personally take the witness stand and testify that he has never been convicted of a felony offense. Trevino v. State, 577 S.W.2d 242, 243 (Tex.Crim.App. 1979). Instead, he may obtain such evidence from others who sufficiently know him. Id. For example, a family member, employer, or close friend can testify as to a defendant's probation eligibility and this is sufficient to show probation eligibility. Mansfield v. State, 306 S.W.3d 773 (Tex.Crim.App. 2010).

At the punishment phase of trial, Defense Counsel announced that he was resting Petitioner's case without calling any witnesses. (RR7:60). The State pointed out to the Court that without calling any witnesses, Petitioner would be waiving his right to have the jury consider probation as his punishment because he had not called a witness to testify that he was eligible for probation. (RR7:60-63).

Defense Counsel incorrectly argued that a live witness was not necessary because he had filed sworn application for probation, and that the application alone was enough for the jury to consider probation as a punishment option. (RR7: 60-63). The Court explained to Defense Counsel that the law requires that he produce evidence of Petitioner's probation eligibility and that simply filing an application was not sufficient. (RR7:60-63). Noting a potential "Sixth Amendment problem," the Court suggested re-opening the evidence so that Counsel could call a witness to testify to Petitioner's probation eligibility. (RR7:60-63). Defense Counsel asked if he could call Petitioner to testify only to his probation eligibility, and not subject him to cross-examination on any other issues. (RR7:60-63). The Court explained that if Petitioner testified he would be subject to "wide-open" cross-examination. (RR7:60-63). Counsel then made the decision to close the evidence without calling a witness to testify about Petitioner's probation eligibility. (RR7:64). In defendaning his decision, Defense Counsel stated, "I was under the impression his sworn affidavit was sufficient to take the issue to the jury. They still have to determine whether or not they believe, based on the information, that he's eligible." (RR7:65). Defense Counsel then attempted to limit his exposure to a claim of ineffective assistance of counsel by calling Petitioner to testify outside the presence of the jury that he did not want to testify. (RR7:65-67).

Quite simply, Defense Counsel was not prepared to present evidence of Petitioner's probation eligibility because he did not know he was required to do so despite the fact that that has been the law since at least 1969. See Walker v. State, 440 S.W.2d 653, 659 (Tex.Crim.App. 1969). Counsel then tried to remedy his

4.

ignorance of the law by having his client unknowingly waive counsel's Constitutional ineffectiveness. However, Petitioner was not the only witness who could have testified to Petitioner's probation eligibility. As discussed above, a family member, employer, or close friend can testify to a defendant's probation eligibility and this is sufficient to show that the defendant is, in fact, eligible for probation. Mansfield v. State, 306 S.W.3d 773 (Tex.Crim.App. 2010). There can be no trial strategy in depriving your client of the possibility of probation. In fact, the record in this case shows that counsel's conduct was not based on trial strategy, but rather, on his ignorance of the law. Because Defense Counsel was not prepared to prove up Petitioner's eligibility for probation, counsel's performance was deficient. Strickland, 466 U.S. at 684.

The U.S. Supreme Court has recently upheld that Counsel's ignorance of the law does not excuse his errors. See Hinton v. Alabama, 134 S.Ct. 1081 (2014). An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is quintessential example of unreasonableness under Strickland. See, e.g., Williams v. Taylor, 529 U.S. 362 (2000); and Kimmelman v. Morrison, 477 U.S. 365 (1986).

Petitioner was harmed by counsel's deficient performance because he waived any chance Petitioner had of receiving probation for punishment. While the State may continue to argue, and the Court of Appeals relied on, the sentence Petitioner received indicates that the jury would not have considered probation, one must remember that the State improperly argued that "60 doesn't mean 60," and that Petitioner would receive good time, parole, and "credit after credit." (RR7:90-91). The State unfairly influenced the jury to assess a harsher punishment after Petitioner's own attorney prevented the possibility of probation. Further, counsel raised the floor of what the jury could consider on the range of punishment from probation to five years in prison on at least two of Petitioner's sentences, indicating that Petitioner's sentence should be harsher than what he was originally exposed to. Therefore, Petitioner was harmed by his counsel's deficient performance. Strickland, 466 U.S. at 684.

Petitioner has met both prongs of the Strickland test in showing by a preponderance of the evidence that his counsel's deficient performance affected the outcome of his trial. Strickland, 466 U.S. at 684. This claim of ineffective assistance of counsel is blatant in the record, therefore the Court of Appeals erred in finding that Petitioner's claims were merely speculative and did not constitute a demonstration, founded in the record, that no reasonable trial strategy existed.

## QUESTION TWO: [restated]:

**Did the Court of Appeals err in finding that the Trial Court did not abuse its discretion in allowing irrelevant and unfairly prejudicial extraneous offense evidence to be admitted during trial?**

Petitioner contends that the trial court abused its discretion in admitting evidence of alleged prior extraneous offenses. Specifically, the Court improperly allowed Gay (the alleged victim) to testify to Petitioner's alleged bad character in violation of Texas Rules of Evidence 404(b). The complained-of testimony was also irrelevant and unfairly prejudicial.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX.R.EVID. 404(b). However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b). The rule excludes evidence that is offered for purpose of proving bad character and hence conduct in conformity with that bad character. De La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009), citing Rankin v. State, 974 S.W.2d 707, 709 (Tex.Crim.App. 1996). A trial court's ruling on the admissibility of extraneous offense evidence is reviewed under an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401; Montgomery, 810 S.W.2d at 386. "Evidence which is not relevant is inadmissible." TEX.R.EVID. 402.

Texas Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice, conf-
> usion of the issues, or misleading the jury, or by considerations of
> undue delay, or needless presentation of cumulative evidence.

TEX.R.EVID. 403.

Gay first testified to an attack which allegedly occurred on January 1, 2010, in which Petitioner pushed her down in their home, grabbed her ponytail, and punched her in the face. (RR4:242-243). Petitioner objected to this testimony when it was offered. Gay claimed that she suffered two black eyes and a bloody nose. (RR4:243-244). Gay acknowledged that she never reported this alleged assault to law enforcement. (RR4:245).

6.

Gay next testified to an assault which allegedly occurred on January 3, 2011, in which Petitioner came home after a night out and began screaming at Gay. (RR4:246). Gay claimed that Petitioner woke her up and told her to leave. (RR4: 247). Gay continued that Petitioner pushed her out of the house. (RR4:249). Gay testified that she was forced to leave with the clothes on her back and was not allowed home for at least a month. (RR4:254). Finally, Gay testified to an incident which allegedly occurred in February or March of 2011, in which Petitioner pulled a gun on her when she went to his home to retrieve her belongings. (RR4: 257-258). Gay claimed that Petitioner told her to leave and that she called the police. (Rr4:259). Gay was allowed to testify further that she obtained a protective order against Petitioner. (RR4:259).

None of this "evidence" showed knowledge, intent, preparation, plan, motive, etc., and is, therefore, specifically excluded from Texas Rule of Evidence 404(b). All of this "evidence" was inadmissible because it did nothing more than attempt to prove bad character and conduct in conformity with that bad character. De La Paz, 279 S.W.3d at 343. In addition, this "evidence" was irrelevant and unfairly prejudicial because it did not tend to prove or disprove an element of the offense and only served to inflame the jury. TEX.R.EVID. 401, 402, 403.

Petitioner was harmed by the erroneous admission of this "evidence" because his substantial rights, including his right to a fair trial, were affected by the trial court's ruling. TEX.R.APP. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), citing Kotteakos v. United States, 328 U.S. 750, 776 (1946). Clearly, the admission of Gay's testimony regarding extraneous offenses affected the jury's verdict because it unfairly painted Petitioner as a violent, vengeful person in violation of the Rules of Evidence. See King, 953 S.W.2d at 271.

The trial court clearly abused its discretion in allowing the above mentioned irrelevant and unfairly prejudicial extraneous offense evidence to be admitted during Petitioner's trial. The Court of Appeals finding otherwise was err, and Petitioner's conviction should have been reversed on this point of error.


## QUESTION THREE: [restated]:

**Did the Court of Appeals err in finding that the erroneous self-defense jury instruction did not harm Petitioner?**

In the Court of Appeals' analysis of Petitioner's claim of an improper self

defense jury instruction, the Court found that the instruction was error. However, the Court went on to erroneously find that said instruction did not harm Petitioner. Petitioner asserts that he was harmed by such an instruction, and said error should have elicited a reversal of his conviction from the Court of Appeals.

The trial court improperly instructed the jury that Petitioner had a duty to retreat in order for the law of self-defense to apply. This instruction was clearly erroneous and Petitioner was harmed by the instruction.

A claim of jury-charge error is reviewed under the procedure set out by the Honorable Court of Criminal Appeals in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.App. 1985); Barrios v. State, 283 S.W.3d 348 (Tex.Crim.App. 2009). Pursuant to the Court's analysis of Article 36.19 of the Texas Code of Criminal Procedure, if there is error in the jury charge and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." Id., citing Almanza, 686 S.W.2d at 171. If the error was not objected to, it must be "fundamental" and requires reversal only if the defendant has suffered egregious harm such that the defendant "has not had a fair and impartial trial." Id., citing Almanza, 686 S.W.2d at 171.

During the charge conference, Petitioner requested the following instruction, which is verbatim from the Texas Self-Defense statute:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(RR5:120-121); See TEX.PENAL CODE § 9.31(a).

In charging the jury on the law of Self-Defense, the Court instructed the jury that Self-Defense applied if Petitioner's conduct was "immediately necessary to protect the Defendant from Danielle Gay's use or attempted use of unlawful force; and that at such time a reasonable person in the Defendant's situation would not have retreated." (CR:40-42). Petitioner clearly objected as follows: "Judge, this talks about the duty of a defendant to retreat. That's no where in the statute." (RR5:121). The trial court overruled Petitioner's objection. (RR5:121-122).

In Morales v. State, this Honorable Court instructed that:

> Before 2007, the deadly-force self-defense statute contained a provision imposing a general duty to retreat. At that time, a jury instruction regarding a general duty to retreat was appropriate. But the statute no longer contains the language regarding a general duty to

retreat. In situations where the Legislature has not specifically negated a duty to retreat, the prosecutor can argue the failure to retreat as a relevant factor in determining the defendant's mental state and the reasonableness of his conduct, but the jury cannot be instructed regarding retreat because such an instruction would be a comment on the weight of the evidence.

Morales v. State, 375 S.W.3d 1, 6 (Tex.Crim.App. 2011).

In Morales, the Court found that the trial court erred in including an instruction which required the jury to determine "whether a reasonable person would not have retreated." Id. at 6. The Court determined that the trial court's instruction was an impermissible comment on the weight of the evidence and reversed the Court of Appeals' opinion finding otherwise. Id.

The exact erroneous charge used in Morales was used in this case. Id. (CR: 40-42). Therefore, the trial court impermissibly commented on the weight of the evidence and that error is reversible. Id.

The Court of Appeals properly found that the improper jury charge was in fact error, but they somehow determined that it was harmless to Petitioner.

Because Petitioner properly objected to this erroneous charge, he is only required to show "some harm." Almanza, 686 S.W.2d at 171; Barrios, 283 S.W.3d at 348. Petitioner suffered some harm because the trial court's instruction required him to show he should not have retreated when he had no duty to do so. This added requirement prevented the jury from properly considering Petitioner's defense of Self-Defense. In fact, it prevented the jury from considering self-defense at all based on the facts of the present case. Accordingly, Petitioner's conviction should have been reversed on this point of error. The Court of Appeals blatantly erred in finding this to be harmless error, to the Petitioner.

## QUESTION FOUR: [restated]:

**Did the Court of Appeals err in finding that Petitioner did not properly preserve his complaint of the State's improper jury arguments, thereby precluding it from being raised on appeal?**

During closing arguments at the punishment phase of trial, the prosecutor engaged in improper jury argument. Specifically, the prosecutor agrued that Petitioner had not presented a case or any mitigating evidence and incorrectly advised the jury that Petitioner would earn sentence credits, would earn good conduct time, and would be paroled.

There are four proper areas of jury argument: (1) summation of the evidence,

9.

(2) reasonable deductions drawn from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000), cert. denied, 532 U.S. 944 (2001).

During the punishment phase of trial, the State argued that Petitioner had not presented a case and had not presented any evidence to mitigate his punishment. (RR7:91). Defense counsel properly objected to the State's argument. (RR7:90-91).

It is well-settled, basic, and fundamental law that the failure of an accused to testify may not be the subject of comment by the prosecution. Montoya v. State, 744 S.W.2d 15, 34 (Tex.Crim.App. 1987), cert. denied, 487 U.S. 1227 (1988). Comment of this nature is a violation of the privilege against sefl-incrimination contained in Article I, § 10, of the Texas Constitution and the Fifth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment. Id. at 34; Griffin v. California, 380 U.S. 609, 611 (1965); Lopez v. State, 793 S.W.2d 738, 741 (Tex.App. - Austin 1990). A violation of this kind results in fundamental error. See Brown v. State, 814 S.W.2d 477, 479-480 (Tex.App. - Dallas 1991). Fundamental error requires reversal when the defendant's punishment is affected by the State's jury argument. Montoya, 744 S.W.2d at 38.

In this case, Petitioner's punishment was necessarily affected by the State's argument because the jury was told that because Petitioner did not present a case or any mitigation evidence, there was no reason not to assess a high sentence. Petitioner found himself in the exact position the Constitution prohibits: that of a defendant who is unable to respond to the State's argument and preserve his Fifth Amendment rights. Having suffered fundamental error, which negatively affected his punishment, Petitioner is entitled to a new punishment hearing. Montoya, 744 S.W.2d at 38.

Next, the State argued the following:

> So life doesn't mean life. 60 doesn't mean 60. You heard he got - he'll get credit for his back time. He'll get good conduct time. He'll get parole. He'll get credit after credit from everyone. He doesn't need anymore credit from you guys.

(RR7:90-91).

Whether a defendant receives good conduct time or parole is entirely speculative. TEX.CODE CRIM.PROC. Art. 37.07 § 4. It cannot be determined whether or not a defendant will, in fact, receive good conduct or be paroled because that determination is left entirely to the discretion of the parole authorities. By arguing to the jury that Petitioner would receive good conduct time and would be paroled,

10.

the State unfairly influenced the jury into assessing a harsher punishment than it otherwise would have assessed.

Petitioner was harmed by the State's jury argument because his substantial rights, including his right to a fair trial, were affected by the trial court's ruling. TEX.R.APP.P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), citing Kotteakos v. United States, 328 U.S. 750, 776 (1946). Undoubtedly, the State's argument affected the jury's verdict because the State led the jury to believe that it needed to assess a harsher punishment to insure Petitioner would serve a substantial portion of the punishment assessed. See TEX.CODE CRIM.PROC. Art. 37.07 § 4; King, 953 S.W.2d at 271.

The State's jury argument was improper and harmful. See Wesbrook, 29 S.W.3d at 115; Montoya, 744 S.W.2d at 38; TEX.CODE CRIM.PROC. Art. 37.07 § 4; King, 953 S.W.2d at 271. Therefore, Petitioner's convictions should have been reversed on this point of error. For the Court of Appeals to find otherwise was err.

## PRAYER:

For the reasons stated above, Petitioner asserts that the Court of Appeals erred in not reversing his convictions. Petitioner prays this Honorable Court will GRANT discretionary review and find that the Court of Appeals erred. Petitioner further prays that the judgment of conviction in this case be reversed and remanded for a new trial. In the alternative, Petitioner prays that the Court grant him a new punishment phase, in which he will not be subjected to a jury biased by the State.

Petitioner prays for any other relief he may be entitled to.

I, Edward Guzman, TDCJ # 1845822, being presently incarcerated in the French M. Robertson Unit of the Texas Department of Criminal Justice, in Jones County, Texas; do hereby verify and declare under penalty of perjury that ALL statements and other references made within this PETITION are both true and correct, as well affered in good faith.

[Tex.Civ.Prac.& Rem.Code § 132.001-003 et seq./Title 28 U.S.C. § 1746]
(A signed/dated copy of this PETITION shall have the same validity as its original)

**SIGNED AND EXECUTED on this the 8th day of August, 2015.**

RESPECTFULLY SUBMITTED,

/s/ _____
Petitioner, Pro Se
Edward Guzman # 1845822

11.

## CERTIFICATE OF SERVICE:

The above signer hereby certifies that a true and correct copy of the foregoing PETITION FOR DISCRETIONARY REVIEW has been forwarded to ALL parties, via 1st Class U.S. Mail, Postage Pre-Paid, placed in the outgoing prison mailbox on this the **8th day of August, 2015**; addressed to:

- Abel Acosta, Clerk
  Court of Criminal Appeals
  P.O. Box  12308
  Austin, Texas  78711

- Sherri Tibbe
  Hays County District Attorney
  712  South Stagecoach Trail
  San Marcos, Texas  78666

- State Prosecuting Attorney
  P.O. Box  12405
  Austin, Texas  78711

EG/awr-File

12.

**APPENDIX:**

Memorandum Opinion of Third Court of Appeals
Issued May 13, 2015
No. 03-13-00131-CR
(30 Pages)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00131-CR

**Edward Guzman, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-12-0006, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Edward Guzman of four felony offenses—aggravated kidnapping, aggravated assault with a deadly weapon, aggravated assault causing serious bodily injury, and unlawful restraint—all arising out of an encounter between appellant and his former girlfriend.[1] *See* Tex. Penal Code §§ 20.04, 22.02, 20.02. The jury assessed his punishment at confinement in the Texas Department of Criminal Justice for 60 years for the kidnapping, 20 years and 60 years for the assaults, and 10 years for the unlawful restraint. *See id.* §§ 12.32–.34. On appeal, appellant complains about ineffective assistance of counsel, the admission of extraneous conduct evidence, error in the jury charge, and improper jury argument. Finding no reversible error, we affirm the trial court's judgments of conviction.

---

[1] The jury acquitted appellant of an additional attempted murder charge. *See* Tex. Penal Code §§ 15.01, 19.02.

## BACKGROUND

Appellant and Danielle Gay dated for eight years and have a daughter together. One evening in October of 2011, about nine months after they had broken up, appellant went to Gay's home to pick up their six-year-old daughter for his visitation. He spoke briefly with Gay at the front door, then took their daughter out to his car. Pursuant to a prearranged plan, he gave his daughter to his current girlfriend, Ofelia Cisneros, who drove her to their home. Appellant then returned to Gay's door and asked for their daughter's cell phone. When Gay went inside her home to retrieve it, appellant entered her home and followed her upstairs to the bedroom. Standing in the doorway of the room, he told Gay to put her hands behind her back. She laughed and told him to get out of her house. He then told her that if she screamed, he would hurt her. Gay turned to run away, and appellant tackled her to the floor. He taped and tied her hands behind her back, picked her up off the floor, and put her on the bed. He then paced around the bed and told Gay that she had ruined his life and taken things from him that he wanted. After several minutes, appellant bent her legs and tied her feet to her hands bound behind her back. Gay complained that he was hurting her, cutting off the circulation in her hands. Appellant responded that he did not care and continued tightening the bindings. He then put something in Gay's mouth and gagged her by tying a scarf (or scarf-like fabric) around her head covering her face.

Appellant then left the bedroom, leaving Gay bound face down on the bed. Gay heard him downstairs rummaging through things in her house. Eventually, appellant returned to the bedroom. He removed the scarf from Gay's head, untied her feet from her hands, sat her up on the bed, and then retied her feet together. He sat down next to her and continued telling her that she had

2

ruined his life. Gay apologized and told appellant that he could have back whatever he wanted. He said it was too late for that. He untied her hands from behind her back and retied them in front of her. He then tried to give her something to drink but she refused, not knowing what it was. After several unsuccessful attempts to force her to drink the liquid, appellant set the cup aside and told her that they had to go to his house to get his car because all of the things he wanted to take would not fit in her car. He loosened the bindings on her feet to give her leeway to walk and escorted her downstairs. At the bottom of the stairs, appellant pulled up his shirt to show her a gun he had stuffed in his pants "in case [she tried] anything." Gay recognized the gun as her gun that she kept in the top cabinet of her kitchen. Appellant pulled her through the house and then took her to her car, holding her arm. He put her in the passenger seat and then went around to the driver's seat. He got in the car, looped the rope that bound Gay's hands around the base of his seatbelt, and buckled his seatbelt.

Appellant drove them to his house. At his house, he woke up Ofelia and had her bring his daughter to his car, telling her that Gay was going to put gas in both of their cars. Gay remained bound in the passenger seat of her car and saw Ofelia carry her sleeping daughter to appellant's car. She also saw appellant get a gas can off the porch and put it in her car. With Ofelia driving appellant's car and appellant driving Gay's car, they drove to the gas station where appellant removed Gay's debit card from her purse, asked her for the PIN number, and used her debit card to put gas in both cars and the gas can. After filling up, appellant started driving back to her house. At one point, he pulled over and went to talk to Ofelia, who had pulled over in his car. He instructed Ofelia to go to a particular location and wait for him.

3

Appellant then drove toward Gay's house, but stopped at a church about two blocks from her house. After a few minutes, he left the church and drove to Gay's house. He took her inside, telling her that they were waiting for Ofelia to come pick him up. After a while, appellant took Gay back out to the car, explaining that they could drive around to look for Ofelia. After driving for a few minutes, appellant pulled over on the side of the road. He got out of the car, looked around, then got back into the car and drove further down the road, pulled over again, and got out to look around again. Appellant repeated this pulling over process four times. He then drove back to Gay's house and then around town several times, all the while pretending to be looking for Ofelia. Eventually, appellant parked at the end of Gay's street. He turned off the car and told Gay that he wanted her to get in the driver's seat because it was hurting his back. He removed the bindings from her hands, pulled her over the console to the driver's seat, and told her to put her hands on the steering wheel. Appellant then got out and came around to sit in the passenger seat. After a few minutes, Gay told appellant that she had to use the bathroom. He agreed to allow her to go to her house to use the bathroom. Tightly holding her arm, they walked to her house. He stood in the open doorway of the bathroom while Gay went to the bathroom. He then took her back to her car, putting her back in the driver's seat.

As they sat in the car, purportedly looking for Ofelia's car, appellant became agitated. He sat on the edge of his seat shaking his leg and he repeatedly checked his phone. Gay continued looking for Ofelia's car. At one point, as she turned from looking down the road, appellant started hitting her in the head. As he repeatedly struck her in the face with what felt like fists, Gay managed to open the driver's door. Appellant grabbed her, and they struggled as she tried to get out of the car.

4

At that point, Gay noticed her gun in appellant's hands and she attempted to grab it. As they struggled over the gun, they both fell out of the car. After they landed on the ground, appellant started kicking Gay in addition to hitting her with either his fists or the gun. Gay testified that she could feel blows all over her body. She began screaming, and he kicked her in the face with his boot; Gay then felt herself begin to lose consciousness. At that point, as they once again struggled over the gun, she heard the gun going off. Gay fell backward onto the pavement and tried to pull herself away from appellant. Appellant grabbed her, dragging her back toward him. He sat on her back straddling her and started pulling her hair, yelling at her to stop screaming. Gay managed to stand up and fall back onto appellant causing him to release her. She again tried to crawl away. Appellant grabbed her by the throat and dragged her back toward the car. At one point, appellant pushed Gay back onto the hood of the car and choked her with his hands around her neck. Gay then recalls her body suddenly hitting the ground, and appellant was gone. She pushed herself up and ran screaming toward her complex. She ran into her neighbor's carport and banged on his door. She made contact with her neighbors, who called the paramedics.

Gay was transported by a life flight helicopter to a hospital in Austin where she was treated for severe facial and head injuries, including soft tissue trauma to her face of such complexity it required a plastic surgery consultation (a laceration from her forehead down across her nose went through the muscle and exposed the bone), a nasal bone fracture, a chin laceration, and two large scalp lacerations that required multiple staple sutures.

## DISCUSSION

In five points of error, appellant asserts that his trial counsel rendered ineffective assistance, the trial court erred in admitting extraneous conduct evidence during the guilt-innocence phase, the trial court submitted an erroneous self-defense instruction in the jury charge, and the prosecutor engaged in improper jury argument in the punishment phase.

### Ineffective Assistance of Counsel

In his first and last points of error, appellant contends that his trial counsel rendered ineffective assistance at trial because counsel failed to object to certain testimony from the investigating detective and failed to prove up appellant's eligibility for community supervision.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

In this case, appellant filed a motion for new trial. However, he did not raise a claim of ineffective assistance of counsel in the motion.[2] Thus, the record is silent as to why trial counsel failed to act in the manner that appellant now complains about on appeal. Consequently, the record before this Court is not sufficiently developed to allow us to evaluate those failures to act because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the claims of ineffectiveness. *See Menefield*, 363 S.W.3d at 593. The record is silent as to whether there was a strategic reason for counsel's conduct or what the particular strategy was. Appellant's assertions that

---

[2] In appellant's affidavit attached to the motion and a subsequently filed affidavit from appellant's father, appellant appears to complain about trial counsel's failure to call a particular witness on his behalf. However, the failure to call this witness is not a ground for ineffectiveness that appellant raises on appeal.

"there can be absolutely no trial strategy" for not objecting to the detective's testimony and that "there can be no trial strategy in depriving [appellant] of the possibility of probation" are mere speculation. Such speculation does not constitute a demonstration, founded in the record, that no reasonable trial strategy existed. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) ("[C]ounsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation.").

Appellant's trial attorney was not afforded an opportunity to explain his reasons for the complained-of conduct. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd); *see also Lopez*, 343 S.W.3d at 143. Appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsel's decisions, the complained-of conduct does not compel a conclusion that his performance was deficient. We cannot say that "no reasonable trial strategy could justify" his decision to engage in the complained-of conduct.[3] *See Lopez*, 343 S.W.3d at 143. Nor can we conclude that his conduct was "so outrageous

---

[3] For example, appellant criticizes his attorney for failing to object to testimony from the detective regarding her belief that Gay's statements to the police were truthful, that appellant lied in his statements to police, and that Ofelia's statements to police were rehearsed. Ordinarily, witnesses are not permitted to testify as to their opinion about the truthfulness of other witnesses, *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011), the credibility of a complainant or the truthfulness of a complainant's allegations, *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993), or the guilt or innocence of a

that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592; *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel."). Accordingly, we conclude that appellant has failed to demonstrate deficient performance on the part of his trial counsel. *See Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so

---

defendant, *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974); *Sandoval v. State*, 409 S.W.3d 259, 292 (Tex. App.—Austin 2013, no pet.). An argument can be made, however, that counsel allowed the complained-of testimony here in order to demonstrate the bias of the State's witnesses. Subsequent questions propounded to the law enforcement official during cross examination arguably attempted to highlight the detective's immediate assumption that appellant was guilty after hearing only Gay's version of events, which led to a failure to conduct a thorough or complete investigation.

Further, as to counsel's failure to prove up appellant's eligibility for community supervision, appellant correctly notes that the record reflects that trial counsel was initially mistaken in his belief that filing the sworn affidavit of appellant was sufficient to prove up his eligibility for community supervision. However, the record also reflects that after the court advised counsel that the sworn affidavit was insufficient and that witness testimony was required to put the issue before the jury, trial counsel conferred with appellant. Subsequently, he opted not to reopen to put on any evidence. Appellant testified about this issue (outside the jury's presence), indicating that even with the requirement that evidence of his eligibility be presented—and the fact that he was "the primary witness" as to that matter— appellant decided it was not in his best interest to testify. Appellant and his counsel could very well have determined that the benefit of appellant testifying to prove up his community supervision eligibility was outweighed by the exposure to cross examination, balancing the remote possibility that the jury would recommend community supervision against possible damaging or incriminating testimony that could be elicited by the State to appellant's detriment. In his brief, appellant attempts to dismiss trial counsel's strategic decision not to have appellant testify by arguing that counsel was unprepared to present evidence regarding appellant's community supervision eligibility because he did not have a witness other than appellant ready to testify as to appellant's eligibility. This contention speculates that some witness other than appellant was available to provide such testimony, something not demonstrated by the record.

9

outrageous that no competent attorney would have engaged in it.'") (quoting *Goodspeed*, 187 S.W.3d at 392).

Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *Lopez*, 343 S.W.3d at 144; *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Nevertheless, we also find that appellant failed to demonstrate that he suffered prejudice.

Even if an appellant shows that particular errors of counsel were unreasonable, he must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693–95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). It is not sufficient that a defendant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Further, merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). Instead, he must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

In his argument regarding prejudice, appellant argues that he was "undoubtedly harmed" by the detective's testimony (regarding her belief that Gay's statements to the police were truthful, that appellant lied in his statements to police, and that Ofelia's statements to police were rehearsed) because this was a situation where there were two sides to the story and the officer endorsed one side. He asserts that "a jury could not help but be swayed by testimony of this nature."

However, this assertion is a speculative claim without support in the record. Moreover, we observe that the detective's opinions were not particularly powerful. Given the fact that she secured an arrest warrant for appellant and forwarded this case to the district attorney's office for prosecution after her investigation, one could logically assume that the detective found Gay credible and her allegations truthful, and that she believed appellant was not truthful in his version of the events.

Appellant also maintains that he was harmed by counsel's failure to prove his eligibility for community supervision because he "waived any chance appellant had at receiving [community supervision] for punishment." However, in order to be eligible for community supervision, the jury would have had to return sentences of ten years or less. *See* Tex. Code Crim. Proc. art. 42.12, § 4(a), (d)(1). The jury only did so in the unlawful restraint case, and in that case the ten-year sentence was the maximum. The other sentences returned by the jury—60 years for the first degree aggravated kidnapping, 60 years for the first degree aggravated assault causing serious bodily injury, and 20 years for the second degree aggravated assault with a deadly weapon (also the maximum for that offense)—indicate that the jury was seeking to impose harsh sentences for appellant's conduct.[4] Nothing in the record suggests that the jury was inclined to return the more lenient punishment of community supervision even had such an option been available.[5] Appellant's

---

[4] We also note that the jury assessed the maximum fine of $10,000 for each of the four offenses.

[5] We observe that in his punishment closing argument, appellant's trial counsel did not even ask for the minimum prison sentences in these cases. Rather—perhaps recognizing the severity of the offenses for which the jury found appellant guilty and accurately reading the jury's perception of the serious nature of the offenses—he asked for a ten-year sentence for all four cases.

11

suggestion that the purported waiver of community supervision subjected him to harsher sentences than he was originally exposed to is a speculative claim not supported by the record.

An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias*, 450 S.W.3d at 136. The record in this case reveals that trial counsel ably and adequately presented the defense strategy, which involved attacking the credibility of Gay's version of events, emphasizing the biased and incomplete nature of the police investigation, and raising self-defense. During guilt-innocence, counsel focused on the bias of the State's witnesses, the inconsistencies in the testimony, the inadequate and one-sided police investigation, and the lack of corroborating evidence. Also, through the State's evidence, he asserted a claim of self-defense. During punishment, counsel focused on the mitigating factor of appellant's age and asked for a minimal sentence of ten years in all four cases. The fact that these strategies ultimately proved unsuccessful does not render counsel's assistance ineffective.

On the record before us, appellant has failed to demonstrate deficient performance on the part of his trial counsel or that he suffered prejudice because of the alleged errors of counsel. Thus, he has not shown himself entitled to reversal based on ineffective assistance of counsel. We overrule appellant's first and fifth points of error.

## Extraneous Conduct Evidence

In its case-in-chief in the guilt-innocence phase of trial, the State offered evidence during Gay's testimony of appellant's extraneous abusive conduct toward her during their relationship. She detailed three instances of appellant's abusive conduct: a physical altercation on

12

New Year's Eve of 2010, an incident on appellant's birthday on January 3, 2011, and an occasion in February or March of 2011 where appellant pointed a gun at her.[6] In his second point of error, appellant asserts that the trial court erred in permitting this testimony because it was inadmissible character-conformity evidence.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its determination "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court's decision to admit evidence of an extraneous offense is generally within this zone if the evidence shows that (1) an

---

[6] More specifically, Gay testified that during an altercation in their home on New Year's Eve appellant threatened her (by making a slashing motion across his neck), pushed her, punched her in the face at least three times, grabbed her by the back of her neck and ponytail, and threw her down on the floor. She stated that as a result of this incident, she had two black eyes and a bloody and swollen nose.

Regarding the birthday incident, Gay testified that when appellant returned from celebrating his birthday with friends, he came home angry and began screaming at her, demanding that she leave. When she went to the bedroom to collect her things, he kicked open the bedroom door and hit her in the middle of her body, knocking her backwards. Then, when she tried to get her daughter to leave, appellant took the child from her and took the child into the bedroom. He then forcibly removed Gay from their home by grabbing her at the back of her neck and around the waist and dragging her out of the house. Gay was without any of her things and ended up moving in with appellant's aunt next door.

According to Gay's testimony, a month or two later, appellant indicated in a message through his aunt that Gay could return to their home to collect her belongings. When she was inside the house, appellant became agitated when she began asking about the location of certain personal items (such as her driver's license and social security card) and told her to get out. When she reminded appellant that he had told her she could come get her things, he stomped off to the bedroom and returned with a gun. He pointed the gun directly at her and repeated his demand that she leave their home.

13

extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *Id.*; *Sandoval*, 409 S.W.3d at 297.

Texas Rule of Evidence 404(b) prohibits the admission of extraneous conduct (other crimes, wrongs, or acts) to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). However, extraneous conduct evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Extraneous conduct may be admissible for some other purpose, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1991) (op. on reh'g). This list is illustrative—the exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343. Extraneous conduct evidence may also be admissible to rebut defensive theories raised by the defense. *See Williams*, 301 S.W.3d at 687 (rebuttal of defensive theory is "one of the permissible purposes for which [relevant] evidence may be admitted under Rule 404(b)"). Further, "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *De La Paz*, 279 S.W.3d at 343 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (emphasis added) (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Throughout the course of trial, appellant advanced several defensive theories—he denied causing Gay's injuries, he challenged Gay's version of the events, he attacked the police investigation, and he asserted self-defense—all premised on his claim that he acted that night to protect himself from Gay when she fired shots at him. He first made this claim during his phone call to the detective the morning after the incident when Gay was in the hospital (a recording of which was admitted into evidence and published to the jury). He then made similar comments during his interview with the detective later that day (a recording of which was also admitted into evidence and published to the jury). Appellant's counsel alluded to it during jury selection when questioning the venire panel about contradictory testimony and the use of self-defense in any setting, even within a close personal relationship. He developed it through cross-examination of the State's witnesses, particularly the police detective, when he highlighted the fact that she took no actions to investigate appellant's claims regarding Gay's alleged threats toward him and Ofelia and when he sought the detective's confirmation that appellant's comments to her reflected that he acted in self-defense.

The State offered the evidence of appellant's extraneous abusive conduct toward Gay, in part, to rebut appellant's theory that she was the first aggressor and that he acted in self-defense as well as to rebut appellant's explanation that Gay's injuries were self-inflicted during their struggle over the gun. Based on the evidence before it, the trial court could have concluded that the evidence of appellant's extraneous prior abusive conduct toward Gay rebutted the defensive theories presented to the jury. Consequently, we cannot say that the trial court's admission of the complained-of testimony was an abuse of discretion. We overrule appellant's second point of error.

15

## Jury Charge Error

In this case, on appellant's request, the trial court included an instruction on self-defense in the court's jury charge. In the abstract portion of the court's charge, the trial court instructed the jury as follows:

> Upon the law of self defense [sic] you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> A person is justified in using force against another: (1) if he would be justified in using force against the other; and (2) if a reasonable person in the defendant's situation would not have retreated; and (3) when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

During the charge conference, appellant requested an additional instruction to explain self-defense.[7] The State objected, maintaining that the instruction was already reflected in the charge. Appellant next complained that the self-defense jury instruction "talk[ed] about the duty of a defendant to retreat. That's nowhere in the statute." Both the prosecutor and the trial court maintained that the duty to retreat "[is] in the law." The court overruled appellant's request for his submission and

---

[7] Specifically, appellant asked that the following paragraph be added:

> When a person is attacked, or an attempt is made to attack such person, with unlawful force, and there is created in the mind of such person a reasonable expectation or fear of some bodily injury, then the law excuses or justifies such person in resorting to force to the degree that he reasonably believes is immediately necessary, viewed from his standpoint at the time, to protect himself from attack or attempted attack.

16

retained the language relating to the duty to retreat in the charge. In his third point of error, appellant argues that the trial court erroneously instructed the jury that appellant had a duty to retreat in order for the law of self-defense to apply. He further maintains that the incorrect instruction on self-defense caused him harm.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The trial court must charge the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense charged. *See* Tex. Code Crim. Proc. art. 36.14; *see also Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The trial court is also required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007).

Under the Texas self-defense statute, a person may use deadly force if he reasonably believes such force is immediately necessary to protect himself from another person's use or attempted use of deadly force. *See* Tex. Penal Code § 9.32. Before 2007, the deadly-force self-defense statute contained a provision imposing a general duty to retreat, providing that the use of deadly force was justified only "if a reasonable person in the actor's situation would not have retreated." *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141–42 (amended 2007) (current version at Tex. Penal Code § 9.32); *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011). However, effective September 1, 2007, the Legislature

amended the statute to delete the language regarding a general duty to retreat. *Morales*, 357 S.W.3d at 4–5; *McBride v. State*, 359 S.W.3d 683, 694 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Because this general duty to retreat was removed from the self-defense statute in 2007, the self-defense instruction given here—indicating that appellant had a duty to retreat—was erroneous. *See Morales*, 357 S.W.3d at 6.

If the trial judge charges on a defensive issue but fails to do so correctly, this is charge error subject to review under *Almanza*. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth analysis for determining whether jury charge error requires reversal). Under *Almanza*, if the jury charge error has been properly preserved by an objection or request for instruction, as in this case, reversal is required if the appellant has suffered "some harm" from the error. *Vega*, 394 S.W.3d at 519; *Almanza*, 686 S.W.2d at 171. We assess whether the appellant has suffered actual harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Vega*, 394 S.W.3d at 521 (quoting *Almanza*, 686 S.W.2d at 171). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174; *see Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013) ("This means that the trial record must demonstrate that there is some actual harm and not just a theoretical complaint.").

Beginning with the jury charge itself, we observe that in addition to erroneously instructing the jury in the abstract portion of the charge that a person was justified in using force

18

against another only if a reasonable person in the defendant's situation would not have retreated, the trial court included the duty to retreat in each of the self-defense application paragraphs.[8] Thus, the jury charge, in four different places—the abstract portion of the charge and three self-defense application paragraphs—impermissibly instructed the jury to determine whether there was a general duty to retreat. *See Morales*, 357 S.W.3d at 5–6 (jury instruction on general duty to retreat constituted comment on weight of evidence). Nothing in the remainder of the charge instructed the jury that it should not determine, as a general matter, whether a duty to retreat existed. *See id.* at 6. Accordingly, the remainder of the jury charge did not alleviate the harm caused by the incorrect self-defense instruction. Thus, consideration of the entirety of the jury charge weighs in favor of a finding of harm.

Next, we must consider the state of the evidence and determine whether the jury charge error related to a contested issue. Appellant did not testify at trial. The defensive theories were presented through the State's evidence—primarily the recording of appellant's interview with

---

[8] After the application paragraph for the attempted murder, the court provided the following application paragraph for self-defense:

*Self defense* [sic]
Now, if you find and believe from the evidence that on the occasion in question the Defendant reasonably believed that his conduct of grabbing and twisting Danielle Gay's head at the neck was immediately necessary to protect the Defendant from Danielle Gay's use or attempted use of unlawful force; and that at such time a reasonable person in the Defendant's situation would not have retreated, you will acquit the defendant and say by your verdict not guilty as to Count II.

Similar application paragraphs applying self-defense were given following the application paragraphs for aggravated assault with a deadly weapon and aggravated assault causing serious bodily injury.

the detective—and the cross examination of the State's witnesses. During his interview with the detective, appellant gave his version of the events. He indicated that when he and Ofelia picked up his daughter that evening for his visitation, Gay asked him to stay but he declined and went home with Ofelia and his daughter. According to appellant, Gay then showed up at his house in Kyle at about 4:00 in the morning. She knocked on his window and said that if he wanted to get his stuff, he needed to come and get it now. When he told Gay that he did not have any gas in his car, she offered to buy the gas to fill his car. Appellant said that they then went to the gas station and filled up the cars with gas—he and Gay in her car, Ofelia and his daughter in his car.[9] After filling up, they went to Gay's house. When he realized it was going to take time to sort out what things he could take, he sent Ofelia home, telling her that Gay would just drop him off. Appellant told the detective that eventually he got tired of waiting for Gay to decide what he could take, so he told Gay to just take him home. He said that when they were in her car, she pulled her gun out of her pocket and threatened to kill him and Ofelia. According to appellant, they struggled over the gun and fell out of her car during the struggle. He said that he had his arms wrapped around Gay from behind when she fired the gun multiple times. Appellant told the detective that he got away from Gay and called Ofelia to come pick him up. He showed the detective an injury he had on his thumb where either the hammer of the gun pinched him or the flash from the gunshot burned him.

While giving his version of the events, appellant said that he was "fighting for his life" and was "just trying to get away from [Gay]." However, he adamantly maintained that he did

---

[9] Appellant also explained that he filled up the gas can because Gay was having problems with her car.

20

not cause her injuries. He repeatedly denied ever hitting or kicking Gay. In fact, even as he conceded that Gay "might have" been hurt during the struggle over the gun, he still insisted he "never hit her."[10] Further, when the detective showed appellant photographs of Gay's injuries and asked if he could explain them, he said that they were probably self-inflicted. When the detective directly asked appellant if he "did this" (caused the injuries depicted in the photographs), he responded, "No." When the detective admonished appellant that he needed to be honest and expressed her opinion that more happened than he was telling her, appellant insisted that he "didn't do anything" to Gay.

There was but the barest scintilla of evidence that during his encounter with Gay, appellant was "fighting for [his] life" and thus may have unintentionally injured Gay during his attempts to protect himself from her. However, appellant's primary defense was that he did not cause Gay's injuries at all, that they were self-inflicted, and that the events had not transpired as Gay claimed. The secondary defense was that if she was injured during the struggle, it was not his fault because he was acting in self-defense. The self-defense theory applied only to three of the five charges, and it was a marginal theory at best. A comparison of the photographs of Gay's extensive injuries and appellant's minimal injuries demonstrates the unlikelihood that Gay's injuries were self-inflicted and refutes appellant's repeated claim that he "didn't do anything" to Gay. Under the circumstances, we cannot conclude that, given the weak evidence of self-defense combined with appellant's adamant denial that he caused Gay's injuries, the state of the evidence demonstrates that

---

[10] Appellant indicated that he and Gay fell over some mailboxes at some point when they struggled over the gun, suggesting this might have caused her injuries.

21

the trial court's erroneous instructions on the general duty to retreat caused appellant harm. Thus, after reviewing the evidence in the record, we conclude that the state of the evidence weighs against a finding of harm.

Concerning jury argument, both the State and appellant's counsel briefly mentioned self-defense in closing arguments. However, neither side emphasized the erroneous jury instruction or appellant's purported duty to retreat but instead only referred generally to the concept of whether appellant's conduct was justified because he was acting in self-defense. The prosecutor argued that as the aggressor, appellant did not act in self-defense.[11] Appellant's trial counsel reminded the jury that appellant told the detective in the interview that he "had to fight for his life." Also during his argument, appellant's counsel referred the jury to the court's self-defense instruction in the charge.[12] However, he did not emphasize the erroneous portion regarding the general duty to retreat but

---

[11] At one point, the prosecutor argued:

> He's trying to say that when he did that, he was doing it to defend himself. And any time you see that self-defense in the jury charge, I would -- short of just tearing it up, it's preposterous, because he's trying to say he was justified in doing that, and that he couldn't -- he wasn't in a situation where he could run away, and that he had to do it because if he didn't, she was about to kill him.

Arguably, this could be construed as a vague allusion to the fact that appellant did not retreat. However, the prosecutor's argument is somewhat confusing and unclear and does not affirmatively argue that appellant was required to retreat.

[12] Appellant's counsel referred the jury to the self-defense instruction in the abstract portion of the jury charge, although his disagreement and displeasure with the instruction was apparent:

> There is a self-defense charge in the -- in the jury's charge on page three, paragraph four. You can read it for what it's worth. It indicates our theory of the case, that there was a need for him to react to what was going on, and it was immediately necessary to protect himself.

22

referred to the fact that it was "immediately necessary" for appellant to react as he did to protect himself from Gay. Overall, in the context of the entire jury argument, neither side focused on self-defense and neither side argued that appellant had a duty to retreat. Thus, we conclude that the arguments of counsel do not weigh in favor of a finding of harm.

Finally, with regard to the final factor, we consider the fact that appellant was not actually entitled to a jury instruction on self-defense in this case to be relevant information in evaluating harm. A defendant is entitled to a self-defense instruction if the issue is raised by the evidence, regardless of whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the witnesses or the viability of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008); *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). However, because self-defense is justification for one's actions, the assertion of the defense necessarily requires an admission that the alleged conduct occurred. *Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *see Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) ("[A] defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct."). Assertion of self-defense is inconsistent with a denial of the conduct. *Ford v. State*, 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Thus, a defendant is not entitled to an instruction on self-defense if "he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both." *VanBrackle*

23

*v. State*, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no pet.) (citing *Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004)).

In this case, although appellant admitted that he struggled with Gay for the gun, he did not admit that he committed the assaultive conduct alleged.[13] Appellant repeatedly denied ever hitting or kicking Gay, adamantly maintained that he did not cause her injuries, asserted that the injuries were self-inflicted by Gay, and suggested that the injuries were caused by other objects (such as the mailboxes) during their struggle over the gun. Thus, because appellant did not admit to committing the alleged conduct, he was not entitled to an instruction on self-defense. *See Maxwell v. State*, No. 03-06-00473-CR, 2007 WL 2274883, at *2 (Tex. App.—Austin Aug. 6, 2007, no pet.) (mem. op., not designated for publication) ("A defendant must sufficiently admit to the commission of the offense for which the defensive instruction is requested."). We conclude that the fact that appellant was not entitled to a self-defense jury instruction under these circumstances weighs against a finding of harm.

In sum, except for the jury charge itself, the factors discussed above militate against a finding of harm. Accordingly, after reviewing the record and considering the relevant factors, we

---

[13] In the attempted murder charge, the alleged conduct was that appellant "engaged in conduct that amounted to more than mere preparation that tended but failed to effect the commission of [murder]" by "grabbing and twisting Danielle Gay's head at the neck." In the aggravated assault with a deadly weapon, the alleged conduct was that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to Danielle Gay by kicking her" and using or exhibiting a firearm during the offense. In the aggravated assault causing serious bodily injury, the alleged conduct was that appellant "intentionally, knowingly, or recklessly cause[d] serious bodily injury to Danielle Gay by striking [her] about the head with his hand or a firearm."

24

hold that the erroneous self-defense instruction did not harm appellant. We overrule appellant's third point of error.

## Jury Argument

In his fourth point of error, appellant complains about the State's jury argument during the punishment phase of trial.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *see also McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ("A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree.").

Appellant first complains about the prosecutor's comments regarding the absence of mitigating evidence. During closing argument of the punishment phase, after explaining the State's reasons for requesting a life sentence, the prosecutor argued:

> So we expect life. And there have been plenty of juries that can agree on life. That happens all the time.
> But if you can't, then we're hoping that when you're looking to compromise, you're doing it between 60 and life because that's really where he is. There is nothing mitigating. There is nothing to put him in the midrange. There is nothing to put him towards the minimum.

> You heard from Ofelia's mom all sorts of reasons why she deserved lenience. The defense could have put on a case. You heard nothing, no evidence to mitigate, to make it a less horrible --

Appellant objected, complaining, "That places the burden back on the defense. And we have no obligation to testify." The trial court responded, "That's accurate. You don't. And the law that applies to his testimony is contained in the charge." On appeal, appellant contends that the above comments constituted an impermissible comment on his failure to testify.

Initially, we observe that appellant has arguably failed to properly preserve his complaint about this jury argument for appellant review. For a party to preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert denied*, 135 S.Ct. 1158 (U.S. 2015); Tex. R. App. P. 33.1. In addition, the point of error on appeal must comport with the objection made at trial. *Yazdchi*, 428 S.W.3d at 844; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Here, appellant complained that the prosecutor's argument shifted the burden of production to the defense. In doing so, counsel noted that "we"—presumably referring to appellant—had no obligation to testify. Appellant did not, however, explicitly complain that the prosecutor's argument was an improper comment on his right not to testify. Moreover, the trial court failed to make a formal ruling either sustaining or overruling appellant's objection. *See* Tex. R. App. P. 33.1(a)(2)(A). Assuming, however, that the trial court's comment regarding the jury charge containing "the law that applies to [appellant's] testimony" was an implied ruling on an objection complaining about an improper comment on appellant's failure

26

to testify, we find no abuse of discretion in the trial court's implied overruling of appellant's objection to the State's argument.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Ex parte Lane*, 303 S.W.3d 702, 712 (Tex. Crim. App. 2009) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). Proper jury argument must generally fall within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to argument of opposing counsel; and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Jimenez v. State*, 240 S.W.3d 384, 407 (Tex. App.—Austin 2007, pet. ref'd). The fact that a defendant did not testify does not fall into any of these categories and may not be the subject of comment by the prosecution. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08; *see also Griffin v. California*, 380 U.S. 609, 615 (1965). However, the implication that the State's comment referred to the defendant's failure to testify must be a clear and necessary one. *Randolph*, 353 S.W.3d at 891; *Bustamante*, 48 S.W.3d at 767. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation. *Randolph*, 353 S.W.3d at 891; *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008). The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it

as a comment on the defendant's failure to testify. *Randolph*, 353 S.W.3d at 891; *Cruz*, 225 S.W.3d at 548; *see Bustamante*, 48 S.W.3d at 765 (collecting cases). In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Randolph*, 353 S.W.3d at 891; *Cruz*, 225 S.W.3d at 548; *Bustamante*, 48 S.W.3d at 765. Courts are not to find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for the remark is equally plausible. *Randolph*, 353 S.W.3d at 891. In assessing whether the defendant's rights have been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of its being a permissible argument. *Id.*

Viewed from the jury's perspective, the prosecutor's comments in this case regarding the lack of mitigation would not necessarily or naturally be taken as a comment on the defendant's failure to testify. Rather, when placed in context, the prosecutor's statement can reasonably be construed as referring to the absence of mitigating evidence from the testimony of character witnesses testifying on appellant's behalf, and as an argument that the lack of mitigating evidence warrants harsher, not more lenient, sentences. Thus, there is an equally plausible explanation for the prosecutor's comment. Accordingly, there is no violation. *See id.* We conclude that the trial court did not abuse its discretion by overruling appellant's objection to the prosecutor's argument regarding the absence of mitigating evidence.

Also in this point of error, appellant argues that the prosecutor improperly "advised the jury that appellant would earn sentence credits, would earn good conduct time, and would be paroled." During final argument during the punishment phase, the prosecutor argued:

28

So life doesn't mean life. 60 doesn't mean 60. You heard he got -- he'll get credit for his back time. He'll get good conduct time. He'll get parole. He'll get credit after credit from everyone. He doesn't need anymore [sic] credit from you guys.

However, appellant did not object to this argument at trial. Preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). To preserve error regarding improper jury argument for appellate review, a defendant must object and pursue his objection to an adverse ruling. *See Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); Tex. R. App. P. 33.1(a). A defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). A defendant's failure to object to a jury argument, or failure to pursue an adverse ruling to his objection to the jury argument, forfeits his right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Because appellant did not object to the prosecutor's argument concerning credit for time served, good conduct time, or parole, he failed to preserve this complaint for appellate review.

For the above reasons, we overrule appellant's fourth point of error.

29

## CONCLUSION

Having concluded that appellant failed to demonstrate that he suffered ineffective assistance of counsel, that the trial court did not abuse its discretion by admitting the complained-of extraneous conduct evidence, that the erroneous self-defense instruction in the jury charge did not cause appellant harm, and that the trial court did not abuse its discretion by overruling appellant's objection to the State's jury argument, we affirm the trial court's judgements of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: May 13, 2015

Do Not Publish

30

EDWARD GUZMAN #1845822
FRENCH M. ROBERTSON UNIT
12071 F.M. 3522
ABILENE, TEXAS 79601

—PM
AUG 11
2015

PM
AUG 11
2015

—PM
AUG 11
2015

ABEL ACOSTA, CLERK
COURT OF CRIMINAL APPEALS
TEXAS

P.O. BOX 12308
CAPITOL STATION
AUSTIN, TEXAS

78711